**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL MOSS; LESLEY ADAMS;
BETH WILCOX; RICHARD ROYER;
LEE FRANCES TORELLE; MISCHELLE
ELKOVICH; ANNA BOYD,
individually and on behalf of a
class of persons similarly situated;
JACKSON COUNTY PACIFIC GREEN
PARTY,
                    *Plaintiffs-Appellees,*

                    v.

U.S. SECRET SERVICE, of the
Department of Homeland Security;
RALPH BASHAM, Former Director
of the United States Secret
Service, in his individual capacity,
                    *Defendants,*

                    and

TIM WOOD, United States Secret
Service Agent, in his official and
individual capacities; ROB SAVAGE,
United States Secret Service
Agent, in his official and
individual capacities,
                    *Defendants-Appellants.*

No. 07-36018

DC No.
CV 06-3045 MDC

OPINION

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, District Judge, Presiding

9063

Argued and Submitted
October 24, 2008—Portland, Oregon
Submission Vacated and Deferred December 17, 2008
Resubmitted June 25, 2009

Filed July 16, 2009

Before: A. Wallace Tashima and Milan D. Smith, Jr., Circuit
Judges, and George H. Wu,* District Judge.

Opinion by Judge Tashima

---

*The Honorable George H. Wu, United States District Judge for the
Central District of California, sitting by designation.

**COUNSEL**

Edward Himmelfarb, U.S. Department of Justice, Civil Division, Washington, D.C., for the defendants-appellants.

Steven M. Wilker, Tonkon Torp LLP, Portland, Oregon, for plaintiffs-appellees.

**OPINION**

TASHIMA, Circuit Judge:

Plaintiffs-Appellees, individually and on behalf of a class of people similarly situated, allege that two United States Secret Service ("Secret Service") Agents, Tim Wood and Rob Savage (together, the "Agents" or "Defendants"), violated their First Amendment rights when they ordered the relocation of a demonstration critical of then-President George W. Bush. They sued the Agents for damages under the implied cause of action first recognized in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

The Agents filed a motion to dismiss based on qualified immunity. The district court denied the motion, prompting

this interlocutory appeal. Defendants also seek review of the district court's deferral of their alternative motion for summary judgment.

We reverse the district court's denial of the Agents' motion to dismiss, but Plaintiffs should be granted leave to amend their complaint so that they have the opportunity to comply with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ("*Iqbal*"). We lack jurisdiction over Defendants' alternative summary judgment motion; therefore, we dismiss that portion of their appeal.

## FACTS

On October 14, 2004, following a campaign appearance, former President George W. Bush dined at the Jacksonville Inn (the "Inn") in Jacksonville, Oregon.[1] Plaintiffs, who had earlier learned of the President's plan to visit the Inn, organized a demonstration to express opposition to the President and his policies.

Approximately 200 anti-Bush demonstrators assembled on the sidewalk in front of the Inn around 6:00 p.m. The President arrived an hour and fifteen minutes later, entering the Inn's open air dining patio through a back entrance. Just prior to the President's arrival, state and local police cleared the alleyway behind the Inn to provide access to the back entrance, and began restricting the movements of some of the demonstrators outside the Inn. At the same time, Defendants permitted dozens of hotel guests and diners to remain inside the Inn without conducting security screening.

Meanwhile, a pro-Bush demonstration had assembled one block west of Plaintiffs' demonstration. At the time of the

---

[1]The facts stated here, except where noted, are derived from Plaintiffs' Amended Complaint.

events at issue in this case, Plaintiffs' demonstration occupied the north and south sides of California Street directly in front of the Inn, and the pro-Bush demonstration occupied the north side of the street, one block immediately west of the Inn. Relations between the two groups of demonstrators were cordial. The anti-Bush protestors chanted slogans and displayed signs in an orderly and peaceable manner, although their chants were audible in the patio area where the President was dining.[2]

At approximately 7:30 p.m., the Agents directed state and local law enforcement officers to clear California Street between Third and Fourth Streets — the area encompassing Plaintiffs' demonstration — and to move "all persons" in that particular area east of Fourth Street. The Agents informed the officers tasked with relocating protestors that the area between Third and Fourth Streets needed to be cleared to ensure that nobody came within handgun or explosive range of the President.

After making amplified announcements ordering Plaintiffs to disperse, state and local police drove Plaintiffs all the way to the east side of Fifth Street, divided them into two groups, and prevented them from leaving the immediate area. Plaintiffs also allege that state and local police officers employed clubs, pepperspray bullets, and violent shoving as they moved demonstrators away from the Inn. The pro-Bush demonstration on the west side of Third Street was allowed to continue without interruption, and no pro-Bush demonstrators were screened or otherwise inconvenienced.

Plaintiffs allege that the Agents' treatment of the anti-Bush demonstration in Jacksonville was but one instance of an offi-

---

[2]Plaintiffs' Amended Complaint includes a map depicting the positions of the two demonstrations vis-à-vis the back patio area of the Inn at the time of the President's arrival. This map, or diagram, is appended at the end of this opinion as an "Appendix."

cially authorized, *sub rosa* Secret Service policy. Although the Secret Service has issued written guidelines, directives, instructions, and rules prohibiting differential treatment of pro-government and anti-government protestors, Plaintiffs contend that the formal policy is a "sham" designed to insulate Defendants' and the Secret Service's actual policy from review. In support of this claim, Plaintiffs allege that the Secret Service has engaged in analogous conduct on other occasions, despite numerous complaints and lawsuits.

## PROCEDURAL BACKGROUND

Plaintiffs brought this action against the Secret Service, former Secret Service Director Ralph Basham, and the Agents, along with various state and local police officials. The Amended Complaint alleges violations of Plaintiffs' First, Fourth, and Fifth Amendment rights, and seeks both damages and prospective relief. At a pre-trial conference, Defendants indicated that they would resist all discovery requests until they obtained a ruling on a yet to be filed qualified immunity motion. Rather than engage in a discovery battle, Plaintiffs elected to await Defendants' motion.

The Agents filed a motion to dismiss and, in the alternative, for summary judgment, on all of Plaintiffs' claims. Declarations from both Wood and Savage were filed in support of the motion. The declarations state that Wood had no involvement in the relocation of Plaintiffs' demonstration, and that Savage's actions were calculated to protect the President's safety and had nothing to do with Plaintiffs' political message. The district court subsequently issued a minute order indicating that the Agents' motion would be treated as one for summary judgment.

Upon reviewing the Agents' motion and supporting declarations raising contested factual issues, Plaintiffs again submitted discovery requests. Defendants responded by asking that all discovery requests be withdrawn pending resolution of

their motion to dismiss based on qualified immunity. Plaintiffs then filed a Federal Rule of Civil Procedure 56(f) declaration in opposition to the motion for summary judgment.[3] Counsel explained that he had not yet had an opportunity to depose the Agents or to engage in other discovery regarding the events at issue in the summary judgment motion; consequently, that a ruling on the alternative summary judgment motion would be premature, premised as it was on the Agents' declarations, as to which Plaintiffs had been denied discovery.

The magistrate judge heard argument on the motions for and against allowing any discovery. Defendants argued that they were entitled to a ruling on qualified immunity at the earliest possible point in the litigation, and stressed that the qualified immunity doctrine operates to protect government officers from the burdens of pre-trial discovery. Plaintiffs countered that a stay of discovery pending resolution of Defendants' motion to dismiss would be acceptable, but only if the court deferred consideration of the factual issues raised in the summary judgment portion of the motion. The magistrate's order stayed discovery pending resolution of Defendants' Rule 12(b)(6) motion. The order expressly determined that Plaintiffs had made a sufficient showing of need to justify a Rule 56(f) continuance, and vacated the prior order converting Defendants' motion into one for summary judgment. Defendants filed no objection.

At the hearing on the Rule 12(b)(6) qualified immunity motion, Defendants acknowledged that the arguments presented took Plaintiffs' factual allegations as true, and all parties acknowledged that the disputed factual issues were not before the court.

---

[3]Rule 56(f) requires a party seeking postponement of a summary judgment motion to "show how additional discovery would preclude summary judgment and why [it] cannot immediately provide 'specific facts' demonstrating a genuine issue of material fact." *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989) (citing FED. R. CIV. P. 56(f)).

The magistrate then issued a final Report and Recommendation ("R & R") recommending dismissal of all of Plaintiffs' claims against the state and local defendants, their Fourth and Fifth Amendment claims and all claims for prospective relief against the Agents and the Secret Service itself, and dismissal of all claims against Defendant Basham for lack of personal jurisdiction. The R & R concluded that, with respect to the individual Agents, Plaintiffs had pleaded a violation of clearly established First Amendment law. The magistrate did not address the alternative summary judgment motion — the clear implication being that consideration of that motion, and any related fact discovery, would be deferred until after resolution of the motion to dismiss.

The district court adopted the magistrate's R & R without alteration. Defendants timely appealed the denial of qualified immunity, and also sought review of what they characterize as the deferral of their alternative summary judgment motion. The district court stayed all proceedings in this case pending resolution of the Agents' appeal.

## JURISDICTION

The district court exercised subject matter jurisdiction over Plaintiffs' First Amendment claims under *Bivens* and 28 U.S.C. § 1331.[4] Insofar as it "turns on an issue of law," Defendants' interlocutory appeal of the district court's denial of qualified immunity "is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)*; see generally Cohen v. Beneficial Indus. Loan Corp.*,

---

[4]The Supreme Court has never explicitly held that the logic of *Bivens* extends to claims alleging a First Amendment violation. *See Iqbal*, 129 S. Ct. at 1948 (assuming, without deciding, that such a claim is actionable under *Bivens*). This court, however, has held that *Bivens* authorizes First Amendment damages claims. *Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986).

337 U.S. 541, 546 (1949) (recognizing a narrow class of collateral orders that are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated").

As discussed *infra*, we lack jurisdiction to review the district court's deferral of the Agents' alternative motion for summary judgment.

## ANALYSIS

## I. Defendants' Motion to Dismiss

### A. *Pleading Standards*

[1] In assessing the Agents' qualified immunity defense, we must first determine whether the facts alleged in the complaint, viewed in the light most favorable to Plaintiffs, demonstrate that the Agents' conduct violated Plaintiffs' First Amendment rights. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).[5] If the facts alleged establish a constitutional violation, the next step is to determine whether the right at issue was clearly established at the time of the violation. *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (en banc).

Before turning to the threshold question of whether Plaintiffs have sufficiently alleged a constitutional violation, we address recent developments in the Supreme Court's plead-

---

[5]The Supreme Court recently held that lower courts are no longer required to consider whether a constitutional violation occurred before considering whether the right in question was "clearly established." *Pearson v. Callahan*, 129 S. Ct. 808, 821 (2009). *Pearson* "does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*. We see no reason to depart from the *Saucier* two-step procedure here.

ings jurisprudence, first in *Twombly*, then the Court's clarification of that holding in *Iqbal*.

*Twombly* concerned a conspiracy claim under Section 1 of the Sherman Act. 550 U.S. at 548-49. The plaintiffs had alleged facts suggesting that the defendant companies had engaged in parallel market conduct, but did not allege specific facts indicating the existence of an actual agreement in restraint of trade, an element of the plaintiff's cause of action. *See id.* at 553-57. In reversing the Second Circuit's denial of the defendants' Rule 12(b)(6) motion, the Court held that an antitrust plaintiff must plead a set of facts "plausibly suggesting (not merely consistent with)" a Sherman Act violation to survive a motion to dismiss. *Id.* at 557.

The Court cautioned that it was not outright overruling *Conley v. Gibson*, 355 U.S. 41 (1957), the foundational "notice pleading" case construing Federal Rule of Civil Procedure 8(a)(2), but explained that *Conley*'s oft-cited maxim that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley*, 355 U.S. at 45-46, read literally, set the bar too low.[6] *See Twombly*, 550 U.S. at 561-62. "[A]fter puzzling the profession for 50 years," the Court concluded, Conley's "no set of facts" refrain "is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ." *Id.* at 563.

At the same time, the Court appeared to signal that *Twombly* should not be read as effecting a sea change in the law of pleadings. *Twombly* cited *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), for the proposition that pleadings should not be found deficient even if it is apparent "that a recovery is very

---

[6]Rule 8(a)(2) states that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

remote and unlikely." 550 U.S. at 556. And in *Erickson v. Pardus*, 551 U.S. 89 (2007), decided shortly after *Twombly*, the Court noted that "[s]pecific facts are not necessary" for pleadings to satisfy Rule 8(a)(2). *Id*. at 93 (citing *Twombly* (quoting *Conley*) for that proposition).

Much confusion accompanied the lower courts' initial engagement with *Twombly*. *Compare Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 n.5 (9th Cir. 2008) (stating that, at least for the purposes of antitrust cases, *Twombly* abrogated the usual "notice pleading" rule); *and ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008) (concluding that *Twombly* provided Rule 12(b)(6) with "more heft"); *with Aktieselskabet AF 21. November 2001 v. Fame Jeans*, 525 F.3d 8, 15 & n.3 (D.C. Cir. 2008) (noting disagreement among the circuits about *Twombly*'s import and concluding that the case "leaves the long-standing fundamentals of notice pleading intact").

The Court addressed some of the lower courts' lingering questions in *Iqbal*.[7] That case — also a *Bivens* action alleging (among other claims) First Amendment violations — elaborated on *Twombly*'s applicability in the context of a motion to dismiss based on qualified immunity.

The plaintiff in *Iqbal*, a Pakistani Muslim man, was arrested and detained in the days following the attacks of September 11, 2001. 129 S. Ct. at 1942. He alleged that former Attorney General of the United States John Ashcroft and Federal Bureau of Investigation ("FBI") Director Robert Mueller, by specifically authorizing an unconstitutional detention policy, subjected him to "harsh conditions of confinement on account of his race, religion, or national origin." *Id.*

---

[7]As a an initial matter, the *Iqbal* Court made clear that *Twombly*'s "plausibility standard" applies to pleadings in civil actions generally, rejecting the plaintiff's suggestion that the holding be limited to the antitrust context. 129 S. Ct. at 1953.

The Court first explained that "bare assertions . . . amount[-ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth. *Id.* at 1951 (quoting *Twombly*, 550 U.S. at 555). Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion — even if that conclusion is cast in the form of a factual allegation. *Id.* Thus, in *Iqbal*, the Court assigned no weight to the plaintiff's conclusory allegation that former Attorney General Ashcroft and FBI Director Mueller knowingly and willfully subjected him to harsh conditions of confinement "solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." *Id.* (quoting plaintiff's complaint).

After dispatching the complaint's conclusory allegations, the Court elaborated on *Twombly*'s plausibility standard. "A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

**[2]** In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Id.* With that standard in mind, we turn to Plaintiffs' Amended Complaint.

## B.   Viewpoint Discrimination

Plaintiffs allege that the Agents engaged in unconstitutional viewpoint discrimination when they ordered state and local police to move anti-Bush demonstrators away from the public areas outside of the Inn.

**[3]** " '[V]iewpoint discrimination' occurs when the government prohibits 'speech by particular speakers,' thereby suppressing a particular view about a subject." *Giebel v. Sylvester*, 244 F.3d 1182, 1188 (9th Cir. 2001) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 59 (1983) (Brennan, J., dissenting)). The Supreme Court has made clear that government suppression of speech based on the speaker's motivating ideology, opinion, or perspective is impermissible. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."); *Mahoney v. Babbitt*, 105 F.3d 1452, 1456 (D.C. Cir. 1997) (holding that the First Amendment does not permit the federal government to bar ideological opponents from peacefully protesting on the sidewalks of Pennsylvania Avenue during President Clinton's second Inaugural Parade). To prevail on their *Bivens* claim against the individual Agents, Plaintiffs must establish that the Agents ordered the relocation of their demonstration *because of*, not merely in spite of, the demonstration's anti-Bush message.[8]

**[4]** The critical question before us is thus whether Plaintiffs' allegation that the Agents ordered the relocation of their

---

[8]Content neutral regulation of speech, even in a public forum, is permissible if it is narrowly tailored and provides for alternative avenues of communication. *See Hill v. Colorado*, 530 U.S. 703, 725-26 (2000). Plaintiffs insist that their claim cannot be analyzed through the lens of content neutral regulation of speech, and do not address tailoring issues in their briefing. We thus limit our discussion to the viewpoint discrimination allegation.

demonstration *because of* its anti-Bush message is plausible, not merely possible. In *Iqbal*, the Court laid out the following methodological approach for assessing the adequacy of a plaintiff's complaint:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950. We follow the Court's suggested sequence below.

**[5]** The bald allegation of impermissible motive on the Agents' part, standing alone, is conclusory and is therefore not entitled to an assumption of truth. The same is true of Plaintiffs' allegation that, in ordering the relocation of their demonstration, the Agents acted in conformity with an officially authorized *sub rosa* Secret Service policy of suppressing speech critical of the President. The allegation of systematic viewpoint discrimination at the highest levels of the Secret Service, without *any* factual content to bolster it, is just the sort of conclusory allegation that the *Iqbal* Court deemed inadequate, and thus does nothing to enhance the plausibility of Plaintiffs' viewpoint discrimination claim against the Agents.

**[6]** Under *Iqbal*, our next step is to evaluate Plaintiffs' specific factual allegations to determine whether we can reasonably infer a First Amendment violation from those facts. *See id*. Plaintiffs raise two separate non-conclusory factual allegations in support of their claim. First, they allege that the Agents ordered the relocation of their demonstration, but left a similarly situated pro-Bush demonstration undisturbed. Sec-

ond, they contend that the diners and guests inside the Inn were not subjected to security screening or asked to leave the premises, despite their close proximity to the President. They present, in essence, an argument for presuming the Agents' discriminatory intent by way of evidence of disparate impact.

[7] The complaint alleges that the Agents instructed state and local police to move "all persons" between Third and Fourth streets to the east side of Fourth Street, a position roughly the same distance from the Inn's patio dining area as the Pro-Bush demonstration, and that in issuing that order, the Agents explained their desire to ensure that no protesters remained in handgun or explosive range of the President. *See* Appendix. If the Agents' motive in moving Plaintiffs away from the Inn was — contrary to the explanation they provided to state and local police — suppression of Plaintiffs' anti-Bush message, then presumably, they would have ensured that demonstrators were moved to an area where the President could not hear their demonstration, or at least to an area farther from the Inn then the position that the pro-Bush demonstrators occupied. Instead, according to the complaint, the Agents simply instructed state and local police to move the anti-Bush protestors to a location situated a comparable distance from the Inn as the other demonstrators, thereby establishing a consistent perimeter around the President. *See id*. This is not a plausible allegation of disparate treatment.

Plaintiffs allege that they were ultimately driven more than three blocks away from the Inn, surrounded, and subjected to abusive police tactics, but nowhere does their complaint allege, or even imply, that either Wood or Savage had anything to do with how the local police carried out the initial order. Without any allegation tying the Agents to the actions of the local police, we may not assume that either did anything beyond ordering Plaintiffs moved to the east side of Fourth Street. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (stating that courts are not required to make "unreasonable inferences" or "unwarranted

deductions of fact" to save a complaint from a motion to dismiss).

**[8]** Plaintiffs' allegation that the diners and guests inside the Inn were allowed to remain in close proximity to the President without security screening does not push their viewpoint discrimination claim into the realm of the plausible. Again, the crux of Plaintiffs' complaint is that the differential treatment of similarly situated pro-Bush and anti-Bush demonstrators *reveals* that the Agents had an impermissible motive — suppressing Plaintiffs' anti-Bush viewpoint. The differential treatment of diners and guests in the Inn, who did not engage in expressive activity of any kind and were not located in the public areas outside of the Inn, however, offers little if any support for such an inference. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1130 (9th Cir. 2005) (holding that security zone exceptions permitting shoppers and employees, but not protestors, to enter a restricted area did not amount to discrimination on the basis of viewpoint because the two groups were not similarly situated).

**[9]** We conclude that Plaintiffs' complaint fails to plead facts plausibly suggesting a colorable *Bivens* claim against the Agents. The facts do not rule out the possibility of viewpoint discrimination, and thus at some level they are consistent with a viable First Amendment claim, but mere possibility is not enough. The factual content contained within the complaint does not allow us to reasonably infer that the Agents ordered the relocation of Plaintiffs' demonstration because of its anti-Bush message, and it therefore fails to satisfy *Twombly* and *Iqbal*.

## C. *Leave to Amend*

**[10]** Plaintiffs contend that, if the Supreme Court's intervening decisions altered pleading standards in a meaningful way, and their complaint is found deficient under those stan-

dards, they should be granted leave to amend.[9] Courts are free to grant a party leave to amend whenever "justice so requires," FED. R. CIV. P. 15(a)(2), and requests for leave should be granted with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). " 'Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.' " *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (quoting *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)).

**[11]** We agree with Plaintiffs that they should be granted leave to amend. Prior to *Twombly*, a complaint would not be found deficient if it alleged a set of facts consistent with a claim entitling the plaintiff to relief. *See Conley*, 355 U.S. at 45-46. Under the Court's latest pleadings cases, however, the facts alleged in a complaint must state a claim that is plausible on its face. As many have noted, this is a significant change, with broad-reaching implications. *See, e.g.*, *A. Benjamin Spencer, Plausibility Pleading*, 49 B.C. L. REV. 431, 433 (2008) (characterizing *Twombly* as an abrupt and significant departure from the long-standing tradition of liberal notice pleading in the federal courts). Having initiated the present lawsuit without the benefit of the Court's latest pronouncements on pleadings, Plaintiffs deserve a chance to supplement their complaint with factual content in the manner that *Twombly* and *Iqbal* require.

## II. Defendants' Alternative Motion for Summary Judgment

Defendants also seek appellate review of the district court's deferral of their alternative motion for summary judgment.

---

[9]Plaintiffs filed their Amended Complaint on September 26, 2006, and the Supreme Court issued its opinion in *Twombly* on May 21, 2007.

The attempt is misguided and, if it were to succeed, would deny Plaintiffs a fair opportunity to litigate the merits of their claim.

[12] A district court's denial of summary judgment in a qualified immunity case is not immediately appealable where the court's order implicates a question of "evidence sufficiency." *See Johnson v. Jones*, 515 U.S. 304, 313 (1995); *see also Tennison v. City & County of S.F.*, 2009 WL 1758711, at *15 (9th Cir. Jun. 23, 2009) (holding that disputed issues of fact precluded the grant of summary judgment on a qualified immunity claim (citing *KRL v. Estate of Moore*, 512 F.3d 1184, 1188-89 (9th Cir. 2008)); *Berdecia-Perez v. Zayas-Green*, 111 F.3d 183, 184 (1st Cir. 1997) (holding that, because it presented an issue of fact, appellate court lacked jurisdiction to review a defendant officer's interlocutory claim that he did not intend to interfere with the plaintiff's First Amendment rights). Thus, the Supreme Court has held, defenses that amount to a claim that a particular official "didn't do it" may defeat liability on the merits, but adverse rulings on such defenses at the summary judgment stage are not immediately appealable. *See Johnson*, 515 U.S. at 316. To exercise jurisdiction over an interlocutory denial of qualified immunity, an appellate court *must* assume the version of the facts asserted by the nonmoving party, and address itself to the abstract question of the law's application to those facts. *See Schwenk v. Hartford*, 204 F.3d 1187, 1195 (9th Cir. 2000).

Undaunted by the weight of the caselaw, Defendants urge this court to review disputed factual issues in an interlocutory appeal — including the defense that Agent Wood "didn't do it." *See* Appellant's Opening Br. at 41 ("The undisputed evidence in the summary-judgment record shows that Agent Wood played no part in establishing the security perimeter."). The evidence of Agent Wood's involvement in the relocation of Plaintiffs' demonstration can be called "undisputed" only because the district court stayed discovery *at Defendants'*

*request*; thus, Plaintiffs have not yet had the opportunity to dispute it.[10]

Defendants insist that, where qualified immunity is at issue, a district court may not defer ruling on the question of whether an official's actions violated clearly established law, and that orders deferring such a ruling should therefore be immediately appealable. This court squarely rejected that argument in the context of a deferred ruling on an absolute immunity defense. *See Miller v. Gammie*, 335 F.3d 889, 894 (9th Cir. 2003) (en banc) (holding that "[d]istrict court orders deferring a ruling on immunity for a limited time to ascertain what relevant functions were performed generally are not appealable . . . because they are not orders that deny the claimed existence of immunity . . ."). Further, Defendants' argument is difficult to reconcile with the Supreme Court's recognition that limited discovery, tailored to the issue of qualified immunity, will sometimes be necessary before a district court can resolve a motion for summary judgment. *See Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987); *see also Crawford-El v. Britton*, 523 U.S. 574, 593 n.14 (1998) (plurality opinion) (stating that qualified immunity exists to protect officials from " 'broad-reaching discovery' " but not from discovery altogether (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

But even assuming that orders deferring a ruling on qualified immunity are immediately appealable in some circumstances, those circumstances are clearly not present here. In the context of a denial of qualified immunity, the policy justification for permitting immediate appeal rests on the fact that qualified immunity is an immunity from suit, distinct from the merits of the underlying claim. *See Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (noting that qualified immunity "is meant to give government officials a right, not merely to

---

[10]Defendants refused to comply with any of Plaintiffs' discovery requests prior to the district court's issuance of the stay.

avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery . . . , as [i]nquiries of this kind can be peculiarly disruptive of effective government.' " (alterations in original) (quoting *Mitchell*, 472 U.S. at 526)). Thus, an order clearing the way for burdensome pre-trial discovery obligations renders the denial of immunity effectively unreviewable on appeal from final judgment — immunity from suit is of no use at that late stage. *See Mitchell*, 472 U.S. at 526.

**[13]** As discussed above, the district court has yet to order *any* discovery or to compel the Agents to submit to depositions. Thus, to the extent that this portion of Defendants' interlocutory appeal is premised on a need to obtain appellate review before being subjected to burdensome pretrial obligations, that need has not been shown, and the appeal is premature.[11] *See Garrett v. Stratman*, 254 F.3d 946, 953 (10th Cir. 2001) ("Prior to resolution of qualified immunity, 'appellate jurisdiction is invoked when a defendant . . . is faced with discovery that exceeds that narrowly tailored to the question of qualified immunity.' " (quoting *Lewis v. City of Fort Collins*, 903 F.2d 752, 754 (10th Cir. 1990)); *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987) (holding that a discovery order is not immediately appealable when a defendant is faced with discovery that is narrowly tailored to the question

---

[11]Defendants' appeal, as Plaintiffs point out, could also be construed as seeking review of the district court's order granting Plaintiffs' Rule 56(f) motion to continue consideration of the summary judgment motion — although Defendants themselves do not characterize their appeal as such. Where appealable, we ordinarily review the *denial* of a Rule 56(f) continuance for abuse of discretion. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). For the same reasons set forth above, i.e., the fact that the district court stayed proceedings pending resolution of the Agents' motion to dismiss based on qualified immunity, the district court's order granting a Rule 56(f) continuance is not immediately appealable here. We do not reach the question whether there are circumstances under which an order granting a Rule 56(f) continuance amounts to an immediately appealable collateral order.

of qualified immunity); *cf. Lawson v. Abrams*, 863 F.2d 260, 263 (2d Cir. 1988) (holding that appellate court lacked jurisdiction over interlocutory appeal where additional discovery was necessary to determine whether absolute or qualified immunity applied based on defendants' conduct).

*Summers v. Leis*, 368 F.3d 881 (6th Cir. 2004), Defendants' principal authority in support of their argument that appellate jurisdiction is appropriate here, is not on point. In *Summers*, the district court denied the defendant official's summary judgment motion without prejudice to resubmission because it had determined that "any decision regarding qualified immunity was premature and should await the close of discovery." *Id.* at 887. Thus, absent an interlocutory appeal, the defendant was certain to be subject to broad discovery obligations before obtaining appellate review of the qualified immunity motion. As we have already explained, that is not the case here. The district court in this case promptly ruled on the merits of Defendants' qualified immunity defense — deferring only the summary judgment portion of the motion that involved disputed factual issues and, crucially, stayed discovery pending resolution of the motion to dismiss. No discovery at all has been ordered — much less broad-ranging discovery unmoored from the issue of qualified immunity.

**[14]** Before the district court, Defendants firmly resisted all discovery requests and contended that their motion to dismiss ought to be considered prior to any discovery. The court, reasonably, found the argument persuasive and suggested a pretrial sequence that would permit prompt resolution of the qualified immunity motion while holding discovery in abeyance. After getting the litigation sequence they asked for, Defendants now seek an immediate appellate ruling on their summary judgment motion without allowing Plaintiffs the benefit of discovery relating to the core factual matters at issue on their defense of qualified immunity. We therefore lack jurisdiction over this portion of Defendants' appeal; accordingly, it must be dismissed.

### CONCLUSION

Under the plausibility standard forth in *Twombly* and further refined in *Iqbal*, Plaintiffs have not alleged a colorable claim of unconstitutional viewpoint discrimination against the Agents. They may be able to amend their complaint to include facts that will state a plausible claim, and thus the interests of justice would be served by granting them a chance to do so. The district court's denial of qualified immunity is reversed and the case remanded for further proceedings consistent with this opinion, including granting Plaintiffs leave to amend their complaint. Defendants' appeal from the district court's deferral of their motion for summary judgment is dismissed. Each party shall bear its own costs on appeal.

**REVERSED and REMANDED, in part; DISMISSED, in part.**

# APPENDIX

