Glenn **TIBBLE**, et al., Plaintiffs,

v.

**EDISON INTERNATIONAL,**
**et al., Defendants.**

**No. CV 07–5359 SVW (AGRx).**

United States District Court,
C.D. California.

July 31, 2009.

G. Cresswell Templeton, III, William A. White, Hill Farrer and Burrill LLP, Los Angeles, CA, Jason P. Kelly, Schlichter Bogard and Denton, San Louis, MO, Jerome J. Schlichter, Mark Aloysius Kistler, Nelson G. Wolff, Sean E. Soyars, Thomas E. Clark, Troy A. Doles, Schlichter Bogard and Denton LLP, St. Louis, MO, for Plaintiffs.

Brian D. Boyle, Christopher D. Catalano, Gary S. Tell, Robert N. Eccles, O'Melveny and Myers LLP, Washington, DC, Matthew P. Eastus, Abby Claire Schwartz, Amy J. Longo, O'Melveny and Myers LLP, Los Angeles, CA, for Defendants.

FURTHER ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART

STEPHEN V. WILSON, District Judge.

## I. INTRODUCTION

On July 17, 2009, the Court issued an Order Denying Plaintiffs' Motion for Partial Summary Judgment and Granting Defendants' Motion for Summary Judgment in Part ("July 17 Order"). The Court ordered supplemental briefing on Plaintiffs' prohibited transaction claims arising out of the float that State Street retained on Plan assets pending distribution to the Plan participants. Having now considered the parties' supplemental briefing, the Court GRANTS summary judgment for Defendants on Plaintiffs' prohibited transaction claims arising out of float. The Court also clarifies its earlier ruling and GRANTS summary judgment for Defendants for all other claims arising out of State Street's retention of float. The Court finds, however, that a triable issue exists as to whether the fees from the Money Market fund were imprudent.

## II. ANALYSIS

### A. State Street's Retention of Float—Prohibited Transactions

The Court ordered supplemental briefing on two issues: (1) whether the defendant fiduciaries caused the Plan to engage in a transaction that allowed State Street to use assets of the Plan in State Street's own benefit in violation of 29 U.S.C. § 1106(a)(1)(D); and (2) whether the defendant fiduciaries dealt with the assets of the Plan in their own interest by virtue of State Street's retention of float in violation of § 1106(b)(1).

#### 1. § 1106(a)(1)(D)

With respect to the first claim, ERISA makes it per se illegal for a "fiduciary with respect to a plan" to "cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ... transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." *Id.* § 1106(a)(1)(D).

In the July 17 Order, the Court noted that the "party in interest" here is State Street, which is allegedly using the assets of the Plan for its benefit by earning interest on those assets pending distribution of

the assets to the Plan participants. The Court noted, however, that it was unclear what transaction Plaintiffs identified as constituting a "transfer to, or use by" State Street of Plan assets. Because Plaintiffs had not specifically identified which transaction Plaintiffs formed the basis for the alleged prohibited transaction, the Court was also unable to identify which defendant fiduciary caused the Plan to engage in the transaction. The only transaction that the Court identified was the Trust Agreement that was entered into between SCE and State Street in 1999. As the Court noted, however, because this transaction occurred in 1999, it was outside the six-year statute of limitations period. Therefore, the Court ordered Plaintiffs to "identify with specificity the transactions at issue and which fiduciary was allegedly responsible for such conduct." (Docket No. 295, at 93.)

Plaintiffs' supplemental brief now makes Plaintiffs' theory clear. Plaintiffs contend that SCE and its corporate officers allowed State Street to use assets of the plan for State Street's own benefit because SCE failed to monitor or negotiate the amount of float that State Street could retain. (See Pl.'s Supp. Brief, at 4, 5.) Plaintiffs contend that the operative transaction occurred "each time that State Street sent an invoice for payment by failing to recapture float for the benefit of the Plan or even to negotiate the amount of float retained by State Street." (*Id.* at 4.)

■ In light of this explanation, Plaintiffs' prohibited transaction claim under § 1106(a)(1)(D) fails because Plaintiffs have not demonstrated how SCE caused the Plan to engage in a "transaction" with respect to State Street's retention of float. "[I]n order to sustain an alleged transgression of [§ 406(a)(1)], a plaintiff must show that a fiduciary caused the plan to engage in the allegedly unlawful transaction." *Lockheed Corp. v. Spink,* 517 U.S. 882,

888, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). The first element of such a claim is that there must be a "transaction." *See id.* at 892–893, 116 S.Ct. 1783. Such "transactions" include "the 'sale,' 'exchange,' or 'leasing' of property, the 'lending of money' or 'extension of credit,' the 'furnishing of goods, services, or facilities,' and the 'acquisition ... of any employer security or employer real property,' with a party in interest." *Id.* at 893, 116 S.Ct. 1783 (citations omitted). As the Supreme Court has noted, "[t]hese are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Id.* The "transactions" that are prohibited by this subsection "generally involve uses of plan assets that are potentially harmful to the plan." *Id.* The second element of a § 1106(a)(1)(D) violation is that the fiduciary in question must have caused the Plan to engage in the transaction in question. *See Lockheed,* 517 U.S. at 889 n. 3, 116 S.Ct. 1783 (noting that a § 1106(a)(1)(D) violation "requires a showing that a fiduciary caused the plan to engage in the transaction in question").

■ Here, Plaintiff has not identified a single "transaction" within the six-year limitations period that could form the basis for a § 1106(a)(1)(D) prohibited transaction. Plaintiffs argue that there was a transaction "each time that State Street sent an invoice for payment" to SCE. (Pl.'s Supp. Brief, at 4.) Even if State Street's sending an invoice to SCE is a "transaction" (the exchange of money for services), the Plan was not engaged in the transaction in question—the Plan was not a party to the contract between State Street and SCE. Thus, Plaintiff cannot prove that SCE caused the Plan to engage in the transaction in question.

Plaintiffs also argue that SCE engaged in a prohibited transaction by failing to recapture the float for the benefit of the

Plan. SCE's alleged failure to act, however, cannot constitute a "transaction" for the purposes of § 1106(a)(1)(D). In *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir.2004), the plaintiffs argued that the defendant fiduciary's decision not to sell certain stock violated § 1106(a)(1)(D). *Id.* at 1101. The Ninth Circuit found, however, that the plaintiffs failed to identify any "transaction" because the plaintiffs "pointed to nothing akin to a 'sale, exchange, or leasing of property, . . . [or] the lending of money or extension of credit,' all commercial bargains defined by the Supreme Court in Lockheed as falling under § 1106." *Id.* The court found that "[t]he decision by the [defendants] to *continue* to hold 15% of Plan assets in employer stock was not a 'transaction.' " *Id.* (emphasis in original).

Much like *Wright* where the court found that the decision not to sell stock was not a "transaction," here, SCE's failure to recapture the float for the benefit of the Plan was not a "transaction" that could form the basis of a § 1106(a)(1)(D) violation. The failure to recapture float is not the kind of commercial bargain contemplated by the statute that "involve uses of plan assets that are potentially harmful to the plan." *See Lockheed,* 517 U.S. at 893, 116 S.Ct. 1783. Thus, Plaintiffs' prohibited transaction claim under § 1106(a)(1)(D) fails as a matter of law.

**2. § 1106(b)(1)**

■ With respect to the second claim, ERISA makes it per se illegal for a "fiduciary with respect to the plan" to "deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). Plaintiffs' § 1106(b)(1) claim fails, however, because Plaintiffs have not identified any conduct by Defendants in the statutory time period that amounts to a "transaction" or a "deal[ing]" with the assets of the plan in SCE's own interest or for SCE's own account.

As the Court noted in its July 17 Order, Plaintiffs might have been able to state a claim by arguing that SCE obtained an artificially low $150,000 per year base fee for State Street's trustee services, on account of the fact that State Street would be able to retain float. However, the operative "transaction" upon which this arrangement is based was the Trust Agreement between State Street and SCE, the Trust Agreement, was signed in 1999, which was outside of the six-year limitations period. Thus, even if SCE "actually used its power to deal with the assets of the plan for its own benefit" in connection with the 1999 Trust Agreement, Plaintiffs' claim is barred by the six-year statute of limitations. *See Acosta v. Pacific Enters.,* 950 F.2d 611, 621 (9th Cir.1992).[1]

**1.** The Court rejects Plaintiffs' argument that this case is analogous to *Martin v. National Bank of Alaska,* 828 F.Supp. 1427 (D.Alaska 1992). In *Martin,* the fiduciary bank entered into service agreements with the plan outside of the statute of limitations period. *Id.* at 1431. At a later date, the fiduciary bank then made loans out of the plan assets to third parties and the fiduciary bank earned origination fees in connection with those loans. *Id.* at 1430. These loans to third parties were made within the applicable statute of limitations period. *Id.* at 1432. The fiduciary bank argued that the prohibited transaction claims were barred by the statute of limitations because the operative transaction was the act of

entering into the service agreements. *Id.* The court found that although the service agreements were barred by the statute of limitations, the self-dealing claims based on the loans to the third parties were not barred. *Id.*

Unlike *Martin,* however, Plaintiffs have not pointed to any such subsequent transaction within the statute of limitations period that could form the basis of a prohibited transaction claim. In *Martin,* the subsequent transaction was the making of loans out of plan assets. Here, however, Plaintiffs have identified no such transaction, but merely argue that Defendants failed to recapture the float

Subsequent to the Trust Agreement in 1999, however, Plaintiffs have not identified any conduct on the part of SCE that could give rise to a prohibited transaction under § 1106(b)(1). Plaintiffs' theory is that despite the fact that SCE was made aware of the fact that State Street was collecting income from float, SCE "never acted to monitor the float or to negotiate limits upon State Street's receipt of it." (Pl.'s Supp. Brief, at 6.) Plaintiffs argue that by "failing to act," SCE engaged in a prohibited transaction. (*Id.*)

■ As explained above, however, a fiduciary's failure to act cannot form the basis for a prohibited transaction under § 1106. *See Wright,* 360 F.3d at 1101. Instead, the plaintiff must show that the defendant fiduciary engaged in "self-dealing" by "actually us[ing] its power to deal with the assets of the plan for its own benefit or account." *Acosta,* 950 F.2d at 621. Here, Plaintiffs have not pointed to any evidence that SCE dealt with the assets of the Plan in its own interest during the statutory time period. Thus, Plaintiffs' claim fails as a matter of law.

### 3. Notice Pleading

■ Plaintiffs' prohibited transaction claims arising out of State Street's retention of float also fail because Plaintiffs did not sufficiently allege these claims in the Second Amended Complaint. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.; see also Moss v. U.S. Secret Service,* 572 F.3d 962, 968–69 (9th Cir.2009) (citing *Iqbal,* 129 S.Ct. at 1951).

■ Plaintiffs' prohibited transaction claims arising out of State Street's retention of float do not satisfy the pleading requirements under Rule 8. Plaintiffs' only allegation in the Complaint is that Defendants breached their fiduciary duties by "engaging in, and causing the Plan to engage in, prohibited transactions in violation of ERISA § 406." (SAC ¶ 105(K).) This conclusory statement does not identify any specific transactions or identify which fiduciary was supposedly responsible for entering into the transaction. Thus, Defendants' Motion for Summary Judgment is granted with respect to State Street's retention of float on the alternative basis that Plaintiffs did not adequately plead these prohibited transaction claims.

### B. Remaining Claims

■ Plaintiffs contend that they still have viable claims for breach of fiduciary duty under § 1104(a) arising out of State Street's retention of float. Plaintiffs recognize, however, that, in their original motion, Defendants' moved for summary judgment "on any claims with respect to float." (Pl.'s Supp. Brief, at 2; Def.'s S.J. Mot., at 20.) Having moved for summary judgment on all claims arising out of State Street's retention of float, the burden

for the benefit of the Plan. Plaintiffs' claim in this regard resembles a continuing violation theory that the Ninth Circuit rejected in *Phil-* *lips v. Alaska Hotel & Rest. Employees Pension Fund,* 944 F.2d 509, 520 (9th Cir.1991).

shifted to Plaintiffs to point to evidence that would create a triable issue of fact with respect to Plaintiffs' claims arising out of float. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references to that it could be conveniently found."). Plaintiffs' opposition to Defendants' motion for summary judgment, however, does not point to specific evidence to create a triable issue of fact on Plaintiffs' § 1104(a) fiduciary duty claims. Plaintiffs' opposition is virtually silent with respect to claims arising out of State Street's retention of float. Furthermore, Plaintiffs have conceded that State Street's fees were not unreasonable, with or without float. (Pl.'s S.J. Mot., at 23 n. 22.) Thus, Defendants' Motion for Summary Judgment is granted with respect to all remaining claims arising out of State Street's retention of float.

 Plaintiffs also note that the Court did not address Plaintiffs' claim for breach of fiduciary duty with respect to the fees the Plan paid to the Money Market fund in the Court's July 17 Order. Plaintiffs contend that they have an independent claim for breach of the duty of prudence because Defendants chose a money market fund that charged $2.1 million in fees. Indeed, in Plaintiff's opposition to Defendants' Motion for Summary Judgment, Plaintiffs cite with specificity to the expert report of Mr. Pomerantz, who opines that the fees charged to the Money Market fund were excessive because from 1999, to 2005, the Money Market fund in the Plan charged a fee of 18 basis points. (Pl.'s Opp'n, at 18 (citing Pomerantz Rep. ¶ 53).) Mr. Pomerantz opines that a fee of 18 basis points was twice the fee that should have been negotiated. (*Id.*) Plaintiffs cite to an email

sent from an employee at Hewitt to a member of the Investments Staff informing the Investments Staff member that the Plan could be paying only 9 basis points for a comparable money market fund. (*Id.* ¶ 53 n. 105.) Mr. Pomerantz also notes that Vanguard offered a Money Market fund that charged a fee of only 8 basis points. (*Id.* ¶ 53.)

In response, Defendants offer only the declaration of Mr. Ertel who states that the Money Market fees were periodically renegotiated. (Ertel Decl. ¶ 5.) Mr. Ertel also makes the conclusory statement that the fees charged by the Money Market fund were comparable to fees paid for similar money market funds. (*Id.*) Defendants, however, do not explain why the Plan was paying a fee of 18 basis points instead of a money market option that charged a fee of only 9 basis points. Thus, a triable issue exists as to whether the amount of fees charged by the Money Market fund was imprudent in violation of § 1104(a)(1)(B).

## III. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED with respect to all claims arising out of State Street's retention of float. Defendants' Motion is DENIED, however, with regard to the reasonableness of the fees charged to the Money Market fund.

The Court sets a bench trial for October 13, 2009, at 9:00 am. The pretrial conference will be held on October 5, 2009, at 3:30 pm.

IT IS SO ORDERED.