Matthew S. LYONS, Plaintiff,

v.

HOMECOMINGS FINANCIAL
LLC, et al., Defendants.

Case No. C10–584 RAJ.

United States District Court,
W.D. Washington,
at Seattle.

March 9, 2011.

Guy William Beckett, Berry & Beckett, PLLP, Seattle, WA, for Plaintiff.

Brandon Revere Carroll, Christopher W. Tompkins, Betts Patterson & Mines, Seattle, WA, Jesse A.P. Baker, Pite Duncan LLP, Bellevue, WA, Rochelle L. Stanford, Pite Duncan, LLP, San Diego, CA, for Defendants.

## ORDER

RICHARD A. JONES, District Judge.

### I. INTRODUCTION

This matter comes before the court on Defendant Homecomings Financial LLC's motion to dismiss (Dkt. # 21) and Defendant Aurora Loan Services LLC's motion to dismiss (Dkt. # 22). The court has considered the parties' briefing and supporting evidence, and has heard from the parties at oral argument. For the reasons explained below, the court GRANTS the motions (Dkt. ## 21, 22).

### II. BACKGROUND

Plaintiff Matthew Lyons worked with mortgage broker David Kamai, a broker with A+ Mortgage, to refinance his home loan. 1st Am. Compl. ¶ 7.[1] Mr. Kamai procured a loan for Lyons via Defendant Homecomings Financial LLC ("Homecomings"). ¶ 8. According to Mr. Lyons, Mr. Kamai told Mr. Lyons that he had pro-

cured a 30–year loan for $292,000 with a fixed interest rate of 7%, and that his monthly loan payments would be about $1,000. *Id.* Mr. Kamai also told Mr. Lyons that in order to complete the loan, Mr. Lyons would have to pay off a child support lien on the property—and that rather than increasing the amount of the Homecomings loan, he could place another smaller loan to be secured by a second deed of trust on his property, and that this second loan was a 10–year loan and would have an interest rate of 7%. ¶ 9. According to Mr. Lyons, Mr. Kamai did not disclose the amount of the monthly payment on that loan. *Id.*

According to Mr. Lyons, Mr. Kamai did not disclose two key features of his first loan: (1) that the loan was a negatively amortized loan (i.e., his minimum monthly payment would not cover the interest, so the difference would be added to the principal), and (2) that the interest rate was 7.75% and would later increase. *Id.* According to Mr. Lyons, Mr. Kamai also failed to disclose key features of his second loan: (1) that the interest rate was 13.75%, (2) that the initial required monthly payment would pay interest only on the loan, (3) that the required monthly payment would increase in February 2012, and (3) that if Mr. Lyons made the required minimum payments, the loan would not be paid off until February 13, 2032. ¶ 10.

Mr. Lyons signed the loan documents on approximately February 8, 2007, and he initialed each page of the note and deed of trust. *See* 1st Am. Compl., Exs. 1–3. Mr. Lyons contends that Mr. Kamai told him that he did not need to have an attorney review them before he signed. ¶ 11. Mr. Lyons claims he signed where Mr. Kamai told him to sign. *Id.* Mr. Lyons executed

---

1. Hereinafter, this order refers to paragraphs in the First Amended Complaint (Dkt. # 19) using bare "¶" marks.

two promissory notes to Homecomings: the first note was for $292,000 (and was secured by a first Deed of Trust on Mr. Lyons' home), and the second note was for $63,500 (and was secured by a second Deed of Trust on Mr. Lyons' home). ¶ 12. Mr. Lyons admits he signed the Deed of Trust. *Id.* The first promissory note states, at the top of the first page:

> THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.

1st Am. Compl., Ex. 1. The note also sets a minimum payment that the note holder will accept as a monthly payment, and provides that if the minimum payment "is not sufficient to cover the interest due under this Note, the difference will be added to my Principal amount [ ]. My initial Minimum Payment may not be sufficient to cover the interest due." *Id.* at Sec. 3(B). The note sets the minimum payment at $1,153.75, and the note discloses that that amount may change in April 2012. *See id.* at Sec. 3(B)-(C). The note states that the initial interest rate is 7.75 percent and may change, but will never be greater than 9.95%. *See id.* at Sec. 2(A), (C).

Mr. Lyons was also provided with Truth in Lending Act ("TILA") disclosure statements for the two loans. ¶ 14. Mr. Lyons admits he signed those TILA documents, but contends that he was not given copies of either his loan documents or his TILA documents to take home with him. ¶ 16. The TILA disclosure statement lists the "amount financed" as $282,687.26, the amount that will be paid after all scheduled payments are made as $836.321.52, and the "annual percentage rate" as 7.7147%. 1st Am. Compl., Ex. 4. The statement also contains a payment schedule, showing an initial payment of $1,153.75 and, starting in June 2011, a payment increase to $2,163.82. *Id.* The statement also discloses that "Your loan contains a variable-rate feature." *Id.*

Mr. Lyons made his required payments until September 2008. ¶ 15. By that time, Defendant Aurora Loan Services LLC ("Aurora") had become the servicer for the bigger loan. *Id.* Aurora contended that Mr. Lyons did not make his September 2008 payment (which Mr. Lyons disputes), and Aurora instituted non judicial foreclosure proceedings on the first Deed of Trust on Lyons' property. *Id.* To attempt to resolve his dispute with Aurora, Mr. Lyons requested copies of his loan documents from either Homecomings or Aurora, or A+ Mortgage (which had ceased doing business by that time). ¶ 16. Homecomings did not respond to Mr. Lyons' request, but Aurora provided copies of the documents it had in its possession on June 1, 2009. *Id.*

Upon Mr. Lyons' review of the documents provided by Aurora, he realized that the terms of his bigger loan were not what he thought (he thought it was a 30–year fixed with 7% interest, but it was in fact a negatively amortizing loan with initial interest rate of 7.75%). ¶ 19. The document collection also included a "First Payment Notice" that Mr. Lyons claims establishes that he was told that his payments would go toward principal and interest (not interest only). *See id.,* Ex. 6.

Mr. Lyons filed this lawsuit for monetary damages in April 2010, asserting a TILA claim against Homecomings and Aurora for non-disclosure, and for the ways in which Mr. Lyons alleges the promissory

notes and the disclosure statements present conflicting terms, and a claim against Homecomings for violation of Washington's Consumer Protection Act ("CPA"). ¶¶ 22–25.

## III. ANALYSIS

### A. Legal Standards.

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.,* 135 F.3d 658, 663 (9th Cir.1998). Facts alleged in the complaint are assumed to be true. *See Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1030 n. 1 (9th Cir.2002). The issue to be resolved on a motion to dismiss is whether the plaintiff is entitled to continue the lawsuit to establish the facts alleged, not whether the plaintiff is likely to succeed on the merits. *See Marksman Partners L.P. v. Chantal Pharm. Corp.,* 927 F.Supp. 1297, 1304 (C.D.Cal.1996).

A complaint must provide more than a formulaic recitation of the elements of a cause of action, and must assert facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). The Ninth Circuit has summarized *Twombly's* plausibility standard to require that a complaint's "nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir.2009) (citing *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclu-

sory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

### B. The TILA Claims are Time–Barred.

■ In general, claims for money damages under TILA are subject to a one-year statute of limitations. *See* 15 U.S.C. § 1640(e). The statutory period starts to run on "the date of the occurrence of the violation," but courts may apply the doctrine of equitable tolling to extend the start of the statutory period until the plaintiff discovers or had reasonable opportunity to discover the violation. *See King v. State of California,* 784 F.2d 910, 915 (9th Cir.1986). *See also Ralston v. Mortgage Investors Group, Inc.,* 2009 WL 688858 (N.D.Cal. Mar. 16, 2009) (applying equitable tolling where "a reasonable person in [plaintiff's] position might not have understood the true terms of the loan based upon the documents provided, and might not have understood at the time of the transaction that [d]efendants had failed to make required disclosures").

■ The court finds that the circumstances of this case do not support an application of equitable tolling. Mr. Lyons admits that he signed the promissory note, deed of trust, and disclosure statement in February 2007. At the time Mr. Lyons signed and initialed every page of those documents, he could have compared their terms and discovered the discrepancies that he now contends form the basis of a TILA violation. *See Hubbard v. Fidelity Fed. Bank,* 91 F.3d 75, 79 (9th Cir.1996) (refusing to apply equitable tolling where "nothing prevented [plaintiff] from comparing the loan contract, [defendant's] initial disclosures, and TILA's statutory and regulatory requirements"). Thus, this case is distinguishable from cases where plaintiffs never saw the documents that form the basis of a TILA claim: Mr.

Lyons admits that he saw and signed all the relevant documents, and yet did not file suit until more than a year after the signing date.[2]

Furthermore, Mr. Lyons made payments for a year and a half, and only brought suit after he faced foreclosure. Thus, any attempt by Mr. Lyons to analogize this case to *Ralston* is disingenuous, because he was not so confused by the loan documents as to not understand how to comply with payment terms. For these reasons, the court does not find that equitable tolling is appropriate here, and thus Mr. Lyons' TILA claims against Homecomings and Aurora are time-barred.[3]

## C. Plaintiff has Failed to Allege Facts Supporting at Least One Required Element of a CPA Claim.

■ There are five elements of a private CPA claim: "(1) an unfair or deceptive act or practice; (2) which occurs in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the plaintiff in his or her business or property; and (5) which injury is causally linked to the unfair or deceptive act." *Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wash.2d 299, 312, 858 P.2d 1054 (1993) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986)). According

to Homecomings, Mr. Lyons has failed to allege that *Homecomings* made any false or deceptive statements and instead attributes deception to Mr. Kamai, the mortgage broker. *See* ¶¶ 7–11. Homecomings contends that Mr. Lyons' allegation that Mr. Kamai "at all times acted as Homecomings' agent" is conclusory and unsupported by any factual allegations, and thus should be disregarded. *See* Def.'s Mot. at 13–14.

■ The court agrees that the complaint attributes deceptive or unfair conduct to Mr. Kamai, and also lacks any factual basis for the conclusory allegation that Mr. Kamai acted on Homecomings' behalf. But, even assuming that Mr. Lyons has alleged a CPA claim against Homecomings, the claim nonetheless fails because Mr. Lyons has failed to allege a deceptive or unfair act committed by Homecomings. To whatever degree Mr. Lyons attempts to base his CPA claim on the allegations related to his TILA claim, the court has already found the TILA claims to be time-barred. Time-barred claims under TILA cannot support a CPA claim. *See, e.g., Kotok v. Homecomings Financial, LLC,* 2009 WL 2057046 *4 (W.D.Wash. July 14, 2009) (rejecting plaintiffs' argument that a TILA violation is a "per se unfair trade practice affecting public interests" for purposes of Washington's CPA, because plaintiffs' TILA claims were time-barred).

2. Mr. Lyons submitted a notice of supplemental authority on February 16, 2011, attaching an order entered by U.S. Bankruptcy Judge Paul B. Snyder that Mr. Lyons contends "addressed the identical issue" of equitable tolling and resolved the issue consistent with Mr. Lyons' argument in this case. *See* Notice (Dkt. # 33). In the bankruptcy order attached, however, Judge Snyder applied equitable tolling because the "Plaintiffs have alleged in their complaint that the Defendants failed to provide the necessary documents and

disclosures that would have allowed them to discover the alleged violations that form the basis of the claims at [issue]." *In re Bryce,* Case No. 09–48516 (Bankr.W.D.Wash. Feb. 14, 2011). Mr. Lyons does not make such allegations; he admits he signed all the documents at issue. ¶¶ 12, 14.

3. Because the court finds that the TILA claims are time-barred, the court need not consider the Defendants' alternative arguments for dismissal of the TILA claims.

 Mr. Lyons also attempts to allege that his CPA claim is also based on Homecomings' "deceptive act or practice" of failing to disclose that negative amortization would certainly result if he made only the minimum payment (*see* Pltf.'s Opp'n at 19), but the court cannot find that the promissory note was deceptive. The note states multiple times that the minimum payment may not cover the interest due, and that if it does not, negative amortization will occur. *See* 1st Am. Compl., Ex. 1 at Sec. 3(B). This is not a situation where the bank has limited a customer's right to pay more than the minimum payment by imposing a payment cap (which would then make negative amortization a certainty). *See, e.g., O'Donnell v. Bank of America,* 2009 WL 765670 (N.D.Cal. Mar. 20, 2009); *Plascencia v. Lending 1st Mortgage,* 2008 WL 1902698 (N.D.Cal. Apr. 28, 2008); *Mandrigues v. World Savs., Inc.,* 2008 WL 1701948 (N.D.Cal. Apr. 9, 2008). Mr. Lyons has not alleged that the promissory note placed any cap on monthly payments, and the court's review of the note does not reveal any such cap. Thus, because Mr. Lyons could have paid more than the minimum payment and avoided negative amortization, negative amortization was not certain to occur and the note's disclosures were not deceptive.

Thus, Mr. Lyons has failed to allege any facts to support at least one element of his CPA claim, that claim must be dismissed.

4. Though Mr. Lyons requested an opportunity to file a second amended complaint if the court found the First Amended Complaint to be deficient, the court finds that allowing such leave would be futile because there are no additional factual allegations that could cure the deficiencies. *See Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir.2009) (holding that a court should not grant a motion to dismiss unless it is clear "that the complaint could not be saved by any amendment"). The court's view of the uncurable nature of the deficiencies was not ameliorated at oral argument, when the court asked Mr. Lyons' counsel to specify what allegations he would add. Counsel suggested that he would add allegations about a January 26, 2007 disclosure statement and possibly some allegations about Mr. Kamai's agency relationship with Homecomings, but no allegations of that sort would cure the deficiencies addressed in this order.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS the Defendants' motions (Dkt. ## 21, 22).[4]