**ELIZABETH RETAIL PROPERTIES LLC; Judith L. Ansteth, Inc.; and Judith Arnell, an individual, Plaintiffs,**

v.

**KEYBANK NATIONAL ASSOCIATION, a national banking association, Defendant.**

Case No. 3:13–cv–02045–HU.

United States District Court, D. Oregon.

Signed Jan. 26, 2015.

Danny L. Hitt, Jr., James L. Hiller, Hitt Hiller Monfils Williams LLP, Portland, OR, for Plaintiffs.

Joel A. Parker, Schwabe, Williamson & Wyatt, P.C. Pacwest Center, Portland, OR, for Defendant.

## OPINION AND ORDER

MICHAEL H. SIMON, District Judge.

United States Magistrate Judge Dennis J. Hubel issued Findings and Recommendation in this case on November 17, 2014. Dkt. 36. Judge Hubel recommended that (1) Defendant's Request for Judicial Notice (Dkt. 7) be granted; (2) Defendant's Supplemental Request for Judicial Notice (Dkt. 26) be granted; and (3) Defendant's Motion to Dismiss be granted in part and denied in part.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to

which objection is made." *Id.;* Fed. R.Civ.P. 72(b)(3).

■ For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn,* 474 U.S. 140, 152, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (en banc) (holding that the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[ ] *sua sponte* ... under a *de novo* or any other standard." *Thomas,* 474 U.S. at 154, 106 S.Ct. 466. Indeed, the Advisory Committee Notes to Fed.R.Civ.P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

Defendant timely filed an objection (Dkt. 38) to which Plaintiffs responded (Dkt. 39). Defendant objects to portions of the Findings and Recommendation respecting Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. Defendant also requests clarification of Judge Hubel's recommendations respecting standing of Plaintiffs Judith Arnell and Judith L. Ansteth Jeweler, Inc.

The Court has reviewed *de novo* Judge Hubel's Findings and Recommendation, as well as Defendant's objections, Plaintiffs' response, and the underlying briefing in this case. The Court agrees with Judge Hubel's reasoning and adopts the Findings and Recommendation. Furthermore, the Court has reviewed the portions of the Findings and Recommendation respecting Plaintiffs' standing, and finds that further clarification is unnecessary.

For those portions of Judge Hubel's Findings and Recommendation to which neither party has objected, this Court follows the recommendation of the Advisory Committee and reviews those matters for clear error on the face of the record. No such error is apparent.

## CONCLUSION

The Court ADOPTS Judge Hubel's Findings and Recommendations. Dkt. 36. Defendant's Request for Judicial Notice (Dkt. 7) and Supplemental Request for Judicial Notice (Dkt. 26) are GRANTED. Defendant's Motion to Dismiss (Dkt. 23) is GRANTED in part and DENIED in part. Plaintiffs' claims for wrongful foreclosure, bad faith foreclosure, damage to business reputation, and trespass are DISMISSED with prejudice. Plaintiffs Judith L. Ansteth, Inc. and Judith Arnell's claims for defamation are DISMISSED with leave to replead. Defendant's Motion to Dismiss is DENIED as to all other claims.

**IT IS SO ORDERED.**

## FINDINGS AND RECOMMENDATION

DENNIS J. HUBEL, United States Magistrate Judge:

Before the Court is Defendant KeyBank National Association's ("Defendant") motion to dismiss Plaintiffs Judith Arnell ("Mrs. Arnell"), Elizabeth Retail Properties, LLC ("Elizabeth Retail"), and Judith L. Ansteth Jewelers, Inc.'s ("Ansteth Jewelers") (collectively, "Plaintiffs") first amended complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Defendant argues that (1) Mrs. Arnell and Ansteth Jewelers lack standing sue, and (2) all six of Plaintiffs' causes of action turn

on insupportable conclusions. For the reasons that follow, Defendant's motion (Docket No. 23) to dismiss should be granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

The following facts are derived from Plaintiffs' first amended complaint, as supplemented by documents susceptible to judicial notice. The present action stems from: (1) a $615,000 loan agreement entered into by Elizabeth Retail—an Oregon limited liability company whose members are Mrs. Arnell and her husband, nonparty Charles Arnell ("Mr. Arnell")—and Defendant on March 23, 2007; and (2) a $100,000 business line of credit evidenced by a promissory note executed by Ansteth Jewelers, an Oregon S corporation whose sole shareholder is Mrs. Arnell, in favor of Defendant on March 23, 2007.[1] The $615,000 loan agreement and the business line of credit were secured by a trust deed for real property owned by Elizabeth Retail in Portland, Oregon, as well as guaranties executed by Ansteth Jewelers, Mrs. Arnell and Mr. Arnell. Ansteth Jewelers leased the property from Elizabeth Retail for purposes of operating a retail jewelry store.

The promissory note establishing the business line of credit from Defendant provided, in pertinent part:

PAYMENT. Borrower [Ansteth Jewelers] will pay this loan in full immediately upon Lender's demand....

. . . .

LATE CHARGE.... If Lender demands payment of this loan, and Borrower does not pay this loan in full within 16 days after Lender's demand,

Borrower will ... be charged either 5.000% of the unpaid portion of the sum of the unpaid principal plus accrued interest or $25.00, whichever is greater.

. . . .

LENDER'S RIGHTS. Upon Lender's demand, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

. . . .

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

. . . .

DEMAND LINE OF CREDIT: Borrower understands that Lender is authorized to make an annual (or more frequent) credit review based upon Borrower's current financial condition in determining whether to continue the line of credit. Nevertheless, Lender may, at any time, with or without cause, refuse to advance funds or extend credit under the line of credit.

. . . .

GENERAL PROVISIONS.... Lender may delay or forgo enforcing any of its

---

1. An S corporation is "a small business corporation" meeting specified requirements that elects to be taxed in the same manner as an individual. *See* 26 U.S.C. §§ 1361(a)(1), 1363(a).

rights or remedies under this Note without losing them....

(Def.'s Req. Judicial Notice Ex. F at 1–2.)

The promissory note executed in connection with the $615,000 loan agreement provided, in pertinent part:

DEFAULT. Each of the following constitute an event of default ... under this Note

....

Death or Insolvency.... [T]he insolvency of Borrower ... or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

....

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness ... evidenced by this Note.... Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of a payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provision. If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days, or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter contin-

ues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

....

GENERAL PROVISIONS.... Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them....

(Def.'s Req. Judicial Notice Ex. A at 1–2.) The promissory note also contained a materially identical provision regarding Defendant's ability to exercise its right of setoff against Elizabeth Retail's accounts.[2]

■ At some unspecified time in 2010, Plaintiffs transferred all of their banking business (e.g., Ansteth Jewelers's credit card processing and business checking and Mrs. Arnell's personal accounts) to Defendant based on Defendant's purported long-term commitment to Ansteth Jewelers and promise not to raise the interest rate on the business line of credit. On February 3, 2011, after being diagnosed with cancer, Mr. Arnell filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Oregon.[3] The Summary of Schedules accompanying Mr. Arnell's filing disclosed assets of $1,647,109.98 and liabilities of $5,052,872.04.

On August 17, 2011, several months after learning of Mr. Arnell's diagnosis and subsequent bankruptcy petition, Defen-

2. See supra p. 979, lines 16–22.

3. "A Chapter 7 bankruptcy discharge entitles a debtor to a 'fresh start,' therefore, the debt-

or has an interest in the prompt resolution of all discharge issues." In re Bomarito, 448 B.R. 242, 251 (Bankr.E.D.Cal.2011) (citation omitted).

dant's attorney sent a letter addressed to Ansteth Jewelers in care of its registered agent and Mrs. Arnell, indicating that: (1) Defendant was aware of Mr. Arnell's bankruptcy petition; (2) Ansteth Jewelers was obligated to pay the full amount owing under the business line of credit upon Defendant's demand; (3) a total of $87,358.42 in principal and interest was due and owing on the business line of credit as of August 12, 2011, with interest accruing at a daily rate of $10.26; (4) Defendant demanded payment in full within fifteen days from the date of the letter; (5) Defendant would declare Ansteth Jewelers in default of the business line of credit, foreclose on the deed of trust and pursue Mrs. Arnell on her guaranty if timely payment was not made; and (6) failure to make timely payment would also result in a default on the $615,000 loan agreement entered into by Elizabeth Retail and Defendant.

The August 17, 2011 letter refers to the promissory note executed and delivered by *Ansteth Jewelers* in connection with the $615,000 loan agreement instead of correctly referencing Elizabeth Retail. It should also be noted that the promissory note establishing the business line of credit appears to provide for a sixteen-day window in which to comply with Defendant's demand for expedited payment, at least insofar as it pertained to the imposition of late payment penalties. The fifteen-day period referenced in the letter appears to be drawn from the cure provision found in the promissory note executed by Elizabeth Retail. At this point, however, Defendant had not declared a default under promissory note executed by Elizabeth Retail, rather Defendant warned Ansteth Jewelers that failure to payoff the balance of the business line of credit would lead to such a result.

On September 1, 2011, the bankruptcy court entered an order granting Mr. Arnell a discharge of his debts under 11 U.S.C. § 727. About one week later, on September 7, 2011, apparently within the time frame set forth by Defendant, Ansteth Jewelers paid off the principal and interest remaining on its business line of credit from Defendant. Despite complying with Defendant's demand to pay the remaining balance on the business line credit, Plaintiffs maintain that, as early as mid-November 2011, Defendant already had a plan in place to terminate its relationship with Plaintiffs and foreclose on the property owned by Elizabeth Retail in the first quarter of 2012.

On March 20, 2012, Defendant's attorney sent a letter to Plaintiffs' attorney stating that: (1) Defendant felt that it was "insecure" (an event of default) with respect to the $615,000 loan agreement based on a recent appraisal of the property that produced a loan-to-value ratio of 106.6% (i.e., the current loan balance of $564,831.40 divided by the appraisal value of $530,000.00, which produces a loan-to-value ratio of 106.57%); (2) the insecurity default could only be cured by significantly paying down the balance of the loan or pledging other security; (3) the commencement of bankruptcy proceedings by Mr. Arnell, as a loan guarantor, also meant that Elizabeth Retail had defaulted on the promissory note; (4) the default on the promissory note related to Mr. Arnell's bankruptcy was not curable and was not an event of default that Defendant was willing to waive; and (5) since Elizabeth Retail was current on its loan payments, Defendant was willing to negotiate a workout agreement providing Plaintiffs with a limited amount of time (e.g., three to six months) to secure financing and pay Defendant in full.

On June 13, 2012, Defendant's attorney sent a follow-up letter addressed to Elizabeth Retail in care of Plaintiffs' attorney,

indicating that: (1) Defendant considered Elizabeth Retail in breach of the promissory note; (2) Defendant deemed itself insecure and believed that payment or performance on the note was impaired based on the unacceptable loan-to-value ratio on the property, Mr. Arnell discharging his debts in bankruptcy, and Elizabeth Retail's status as a single asset real estate company whose only asset was the subject property; and (3) Elizabeth Retail had fifteen days from the date of the letter to cure the so-called "insecurity" and "adverse change" defaults by submitting a principal reduction payment of at least $137,840.55, thereby reducing the current loan-to-value ratio on the property from approximately 106% to 80%.[4]

Defendant's attorney's June 13, 2012 letter goes on to note that: (1) Mr. Arnell's bankruptcy constituted an event of default that was not curable, absent a dismissal; (2) such a default entitled Defendant to declare the loan balance immediately due and payable, but Defendant might be willing to consider a short-term repayment plan; (3) Ansteth Jewelers and Mrs. Arnell's guaranties indicate that they agreed to provide financial and credit information upon request; (4) Defendant wanted a personal financial statement and 2011 income tax return from Mrs. Arnell, and a current profit and loss statement, balance sheet and 2011 income tax return from Ansteth Jewelers; and (5) failure to provide the requested information within seven days from the date of the letter would constitute a default under the guaranties, which would in turn result in a further default under the promissory note.

On August 27, 2012, a notice of default and election to sell Elizabeth Retail's property was filed in the Multnomah County Recorder's office, setting a nonjudicial foreclosure sale date of January 7, 2013. The notice of default and election to sell indicates that Elizabeth Retail and its guarantors defaulted on the loan agreement by not providing certain financial documentation to Defendant despite repeated requests to do so, having a guarantor file for bankruptcy, and failing to pay down the balance of the loan or provide additional collateral in light of the fact that Defendant deemed itself insecure and felt that the prospect of payment or performance on the note was impaired.

Defendant ultimately purchased the property at a nonjudicial foreclosure sale held on February 6, 2013. Roughly eight months later, on October 9, 2013, Plaintiffs commenced the present action against Defendant in Multnomah County Circuit Court, alleging causes of action for bad faith breach of contract, tortious bad faith, defamation, damage to business reputation, conversion, intentional infliction of emotional distress, and wrongful foreclosure. Plaintiffs sought damages of not less than $2,700,000.00, and served Defendant with the summons and complaint on October 24, 2013.

Less than month a later, on November 18, 2013, Defendant removed the action to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. On March 12, 2014, Plaintiffs filed a first amended complaint, alleging causes of action for bad faith breach of contract, bad faith foreclosure, defamation, damage to business reputation, trespass, and wrongful foreclo-

---

4. The June 13, 2012 letter contains typographical errors regarding the date of the prior letter (the reference to a March 30, 2012 letter on the first page) and the balance of the loan at the time of the appraisal (i.e.,

$546,831.40, as opposed to $564,831.40, which would have produced a loan-to-value ratio of 103.18% when compared to the appraised value of $530,000.00).

sure. Plaintiffs now seek damages of not less than $2,200,000.00. On March 21, 2014, Defendant filed the pending motion to dismiss Plaintiffs' first amended complaint with prejudice, pursuant to Rule 12(b)(6).

## II. LEGAL STANDARD

A court may dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, the court must accept all of the claimant's material factual allegations as true and view all facts in the light most favorable to the claimant. *Reynolds v. Giusto,* No. 08–CV–6261, 2009 WL 2523727, at *1 (D.Or. Aug. 18, 2009); *see also Dugan v. Bell Tel. of Pa.,* 876 F.Supp. 713, 719 n. 4 (W.D.Pa.1994) (stating that courts need not rely on insupportable conclusions when ruling on a Rule 12(b)(6) motion to dismiss). The Supreme Court addressed the proper pleading standard under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *Twombly* established the need to include facts sufficient in the pleadings to give proper notice of the claim and its basis: "While a complaint attacked [under] Rule 12(b)(6) ... does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955 (brackets omitted).

Since *Twombly,* the Supreme Court has clarified that the pleading standard announced therein is generally applicable to cases governed by the Rules, not only to those cases involving antitrust allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The *Iqbal* court explained that *Twombly* was guided by two specific principles. First, although the court must accept as true all facts asserted in a pleading, it need not accept as true any legal conclusion set forth in a pleading. *Id.* Second, the complaint must set forth facts supporting a plausible claim for relief and not merely a possible claim for relief. *Id.* The court instructed that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1949–50 (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007)). The court concluded: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

The Ninth Circuit further explained the *Twombly–Iqbal* standard in *Moss v. U.S. Secret Service,* 572 F.3d 962 (9th Cir.2009). The *Moss* court reaffirmed the *Iqbal* holding that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moss,* 572 F.3d at 969 (quoting *Iqbal,* 129 S.Ct. at 1949). The court in *Moss* concluded by stating: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inference from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss,* 572 F.3d at 969.

## III. PRELIMINARY PROCEDURAL MATTERS

Defendant has asked the Court to take judicial notice of the promissory notes from Elizabeth Retail and Ansteth Jewel-

ers, the guaranties executed by Mrs. Arnell, Ansteth Jewelers and Mr. Arnell, the deed of trust from Elizabeth Retail, the August 27, 2012 notice of default and election to sell, the August 17, 2011 and June 13, 2012 letters from Defendant's counsel, and court filings from Mr. Arnell's bankruptcy proceeding. The letters from Defendant's counsel were presented to the Court by way of a supplemental request for judicial notice filed on the same day Defendant filed its reply brief. The remaining materials were essentially presented by way of a renewed request for judicial notice filed in support of Defendant's pending motion to dismiss.[5]

■ While district courts generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, they may take judicial notice of documents referenced in the complaint, pleadings from other relevant proceedings, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *Doe v. Successfulmatch.com*, No. 13–CV–03376, 2014 WL 1494347, at *2 n. 2 (N.D.Cal. Apr. 16, 2014). Importantly, the Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

■ When Plaintiffs filed their response brief on April 11, 2014, it did not appear

that they had any objection to the Court taking judicial notice of the two promissory notes, three commercial guaranties, the deed of trust, the notice of default and election to sell, or the court filings from Mr. Arnell's bankruptcy proceeding. And with good reason, because these materials are clearly proper subjects of judicial notice given the allegations asserted in Plaintiffs' first amended complaint and the standard of review for Rule 12(b)(6) motions. On the basis of the foregoing, Defendant's request (Docket No. 7) for judicial notice should be granted.

As to Defendant's supplemental request for judicial notice, however, Plaintiffs chose to file a response memorandum and accompanying exhibits on May 8, 2014. The exhibits proffered by Plaintiffs are a copy Defendant's counsel March 20, 2012 letter to Plaintiffs' counsel and an "Asset Quality Report," which appears to be a four-page internal business record maintained by Defendant that was produced during the course of discovery. In their memorandum, Plaintiffs contend that the August 17, 2011 and June 13, 2012 letters from Defendant's counsel are not proper subjects of judicial notice, but to the extent the Court disagrees, Plaintiffs believe the Court should consider their responsive exhibits.

■ It is clear to the Court that the August 17, 2011 letter is the proper subject of judicial notice because it is referenced specifically in paragraphs twenty-one through twenty-five of Plaintiffs' first amended complaint, and those paragraphs are re-alleged under five of Plaintiffs' claims for relief. The June 13, 2012 letter

5. This request for judicial notice was originally submitted in support of a Rule 12(b)(6) motion filed by Defendant on November 22, 2013. That motion was rendered moot when the Court allowed Plaintiffs to file a first amended complaint as a matter of course on March 12, 2014, in lieu of an opposition brief. Defendant then incorporated its original request for judicial notice by reference when it filed its motion to dismiss Plaintiffs' first amended complaint on March 21, 2014.

also appears to be the proper subject of judicial notice. Though not explicitly referred to as a letter, paragraph thirty-five of the first amended complaint alleges that on June 13, 2012, Defendant's counsel made a demand in bad faith that Plaintiffs submit a principal reduction payment of $137,840.55 in order to cure improperly claimed defaults, and paragraph thirty-five is re-alleged under five of Plaintiffs' claims for relief. Accordingly, Defendant's supplemental request (Docket No. 26) for judicial notice should be granted.

█ Lastly, the Court has not been asked to take judicial of notice of Plaintiffs' exhibits. Courts are, of course, permitted to take judicial notice on their own under Federal Rule of Evidence 201(c)(1). The Court will do so with respect to the March 20, 2012 letter from Defendant's counsel which Plaintiffs represent is referenced, albeit not as explicitly as the August 17, 2011 letter, in paragraph thirty-two of the first amended complaint, and which the Court notes is re-alleged under five of Plaintiffs' claims for relief. The Court will not, however, take judicial notice of the Asset Quality Report because there is no apparent basis for doing so.

## IV. DISCUSSION

### A. Standing

As a preliminary matter, Defendant contends that "Elizabeth Retail is the only proper plaintiff in this case," because Mrs. Arnell (as a guarantor and/or a member of the limited liability company, Elizabeth Retail) and Ansteth Jewelers (as a guarantor) lack standing to assert any of the six causes of action set forth in the first amended complaint.[6] (Def.'s Reply at 4; Mot. Dismiss Hr'g Tr. 9, May 14, 2014.)

6. *See supra* p. 982, lines 22–27.

### 1. General Principles

█ "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III [of the United States Constitution]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir.2010) ("Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication."). At an "irreducible constitutional minimum," Article III "standing requires the party asserting the existence of federal court jurisdiction to establish three elements: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) (citation omitted).

█ In addition to these constitutional limitations on federal court jurisdiction, there are also prudential limitations on its exercise. *Fleck & Assocs. v. City of Phoenix*, 471 F.3d 1100, 1103–04 (9th Cir.2006). The doctrine of prudential standing "restrict[s] the grounds a plaintiff may put forward in seeking to vindicate his personal stake," *id.* at 1104, and requires courts to consider, among other things, "whether the alleged injury is more than a mere generalized grievance, whether the plaintiff is asserting her own rights or the rights of third parties, and whether the claim falls within the zone of interests to be protected or regulated by the constitutional guarantee in question," *Wolfson*, 616 F.3d at 1056 (citation and internal quotation marks omitted).

█ While constitutional standing is evaluated under Rule 12(b)(1), prudential standing is evaluated under Rule

12(b)(6). *Doe v. Hamburg*, No. 12–cv–03412, 2013 WL 3783749, at *5 (N.D.Cal. July 16, 2013). Indeed, "[u]nlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n. 2 (5th Cir.2011). It is also settled law that "[a] prudential standing challenge may be made even where there is no constitutional standing problem." *Hamburg*, 2013 WL 3783749, at *5 n. 4; *see also Fleck*, 471 F.3d at 1105 (stating that "[e]xceptions to the prudential rule presuppose a litigant who has already met the constitutional requirements"); *see also Planned Parenthood of Id., Inc. v. Wasden*, 376 F.3d 908, 917 (9th Cir.2004) (stating that, "[a]s a prudential matter, even when a plaintiff has Article III standing, we ordinarily do not allow third parties to litigate on the basis of the rights of others.").

### 2. Shareholder Standing Rule

Defendant argues that Mrs. Arnell lacks standing to sue under what courts refer to as the shareholder standing rule. The shareholder standing rule is a prudential limitation on the exercise of federal court jurisdiction, and it holds that shareholders generally cannot sue for indirect harm they suffered as a result of an injury to the corporation. *Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir.2013). To avoid the limitations imposed by the shareholder standing rule, "[a] shareholder must be injured directly and independently of the corporation." *Vigilante.com, Inc. v. Argus Test.com, Inc.*, No. 04–cv–00413–MO, 2005 WL 2218405, at *8 (D.Or. Sept. 6, 2005) (citation omitted); *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir.1983) ("To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation. A shareholder must be injured directly and independently of the corporation.") (citations omitted).

In Defendant's view, because Mrs. Arnell has not identified any legal interest of her own or a specific injury independent from the injuries allegedly suffered by Elizabeth Retail, an Oregon limited liability company, she lacks standing to sue under the shareholder standing rule. *See generally Rosenberg v. DVI Receivables, XIV, LLC*, No. 12–CV–22275, 2012 WL 5198341, at *2 (S.D.Fla. Oct. 19, 2012) (stating that "the shareholder standing rule has been applied to members of LLCs"). Mrs. Arnell responds by generally arguing that: (1) each of the plaintiffs has suffered injuries in fact in the form of loss of the property, loss of income and "other damages," (2) Defendant treated Plaintiffs as a single entity and created a system where corporate formalities were irrelevant, and (3) her individual standing is a fact intensive issue that should be decided at trial.

*RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir.2002), provides useful guidance. There, Ronald Santi and Keith Olson were the owners of RK Ventures, Inc. ("the plaintiffs-appellants"), through which they owned a Seattle nightclub known for a time as the Celebrity. *Id.* at 1050–51. Among other things, the plaintiffs-appellants claimed that the defendant-city began enforcing a recently enacted public ordinance—which allowed the defendant to institute abatement proceedings against the property owners and businesses that it determined constituted a public nuisance—against them because their choice of music attracted a predominantly black audience. *Id.* at 1051–54.

On appeal, the defendant-city argued that Ronald Santi and Keith Olson "d[id]

not have standing because, as shareholders, they [could not] bring a § 1983 civil rights action on behalf of the corporation." *Id.* at 1057. The Ninth Circuit began with a description of *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310 (9th Cir.1989), where they held that the plaintiffs—who "were the principal owners and shareholders of a corporation," and who "filed suit on behalf of the corporation and on behalf of themselves individually, alleging personal injuries for a violation of individual free speech rights and for mental and emotional distress"—had standing to bring their civil rights action "[b]ecause the complaint alleged violations of the rights of both the corporation and the individual owners." *RK Ventures,* 307 F.3d at 1057 (citing *Soranno's Gasco,* 874 F.2d at 1318 & 1318–19). The Ninth Circuit then proceeded to reject the defendant-city's argument in *RK Ventures,* stating: "Just as in *Soranno's Gasco,* Santi and Olson complaint seeks damages for themselves, as individuals, for intentional infliction of emotional distress and for defamation. Also, they allege violations of their First and Fourteenth Amendment rights as individuals. Accordingly, they have standing to assert a civil rights claim." *Id.*

By contrast, in the unpublished decision of *Woods View II, LLC v. Kitsap County,* 484 Fed.Appx. 160 (9th Cir.2012), the Ninth Circuit found that Darlene Piper—the sole member of a limited liability company and guarantor of its debts—lacked standing to bring claims against Kitsap County and three of its officials ("Appellees"), because she "was not injured directly and independently of the limited liability company and therefore lack[ed] standing to pursue individual claims against Appellees." *Id.* at 161 (citing *RK Ventures,* 307 F.3d at 1057).

As district court explained in the proceedings below, following the failure of a proposed real estate development, Ms. Piper and her limited liability company ("the plaintiffs") pursued claims against Kitsap County and three of its officials ("the defendants") for "tortious interference with a contract and/or business expectancy," negligence, "outrage," violation of the Takings Clause of the Fifth Amendment, violation of substantive due process under the Fifth Amendment, and violation of procedural due process under the Fifth Amendment. *Woods View II, LLC v. Kitsap County,* No. C10–5114BHS, 2011 WL 2491594, at *1–3 (W.D.Wash. June 22, 2011). The plaintiffs essentially claimed that the defendants attempted to prevent the proposed real estate development, and even went so far as to communicate with the limited liability company's lender and inform it that the limited liability company would never be permitted to sell individual building lots. *Id.* at *3.

At the summary judgment stage, the defendants argued that Ms. Piper lacked "standing to pursue the causes of action alleged and that those claims [we]re solely [the limited liability company's]." *Id.* at *4. The plaintiffs responded by pointing out that Ms. Piper supplied funds and personally guaranteed loans for the purchase and development of the real estate site. *Id.* The district court ultimately ruled in favor of the defendants and found that Ms. Piper lacked standing, stating:

> To establish standing, Piper would have to allege a direct injury that is independent of [the limited liability company]'s injury. Piper has arguably shown, at least on the pleadings, that she suffered personal economic loss as a result of Defendants' alleged wrongdoing. This is insufficient, however, because her personal loss derives from her membership in the [limited liability company]. Instead of a derivative loss, Piper must allege that she suffered an

injury distinct from those of any other [limited liability company] member. . . .

However, Plaintiffs have not supplied competent evidence that any of Piper's alleged injuries . . . derive independently of [the limited liability company]'s harm. . . . Guaranteeing loans for [the limited liability company] that results in separate action against Piper is insufficient to constitute an independent harm; such events would not occur but for the harm allegedly caused to [the limited liability company].

Plaintiffs have failed to provide adequate case law to permit this Court to rule contrary to the aforementioned cases. Therefore, . . . this Court concludes that Piper's claims are derivative of her interest in [the limited liability company]. In short, Piper's claims fail because she lacks standing to pursue them; the complaint reveals that the only Plaintiff with standing to assert the claims before the Court is [the limited liability company].

*Id.* at *5 (internal citations omitted).

■ As in *RK Ventures,* Mrs. Arnell seeks damages in her individual capacity for defamation and damage to her business reputation, in addition to asking for compensation for injuries to Elizabeth Retail and Ansteth Jewelers. Accordingly, the Court recommends denying Defendant's motion to dismiss to the extent it is predicated on Mrs. Arnell (a member of limited liability company) lacking standing to assert any of the six claims alleged in the first amended complaint, pursuant to the shareholder standing rule. *See Soranno's Gasco,* 874 F.2d at 1319 ("The fact that these injuries arose from the same conduct as the corporate injuries does not preclude a finding of direct and independent injury to individual plaintiffs for standing purposes. This circuit has held that the same

conduct can result in both corporate and individual injuries.").

### 3. Guarantor Standing

Defendant also argues that Mrs. Arnell and Ansteth Jewelers, as guarantors, lack standing because they fail to allege any injury or damages that flowed from their guaranties. Plaintiffs respond by pointing out that a guaranty can in fact form the basis of a personal cause of action against a lender, that Mrs. Arnell and Ansteth Jewelers have asserted claims that stem from their guaranties, and that Mrs. Arnell and Ansteth Jewelers claim damages that are not merely derivative of the loan agreement executed by Elizabeth Retail.

Defendant relies primarily on *Johnston v. Oregon Bank,* 285 Or. 423, 591 P.2d 746 (1979), where

the plaintiff, an individual, was the principal shareholder in a corporation. The corporation, in turn, was a general partner of the Van Petten Lumber Company, a partnership. The plaintiff guaranteed a loan made by the defendant bank to the partnership and later claimed that the defendant's disposal of certain loan collateral in a commercially unreasonable manner effected a release from the guaranty.

. . . [O]ne of the claims for damages [in *Johnston* ] was that the defendant bank's actions drove the partnership into bankruptcy. The plaintiff claimed damages based on injury to his credit and business standing, destroyed value of his interest in the partnership, lost wages that he would have drawn from the partnership, legal expenses, and liability on guaranties made to other creditors of the partnership. [*Johnston* ] held that the bank did not have an obligation to the plaintiff. . . .

*Caplener v. U.S. Nat'l Bank of Or.,* 317 Or. 506, 514, 857 P.2d 830 (1993) (internal cita-

tions and footnote omitted). As the Johnston court explained:

> [T]he bank does not have an obligation to plaintiff ... for the kind of damages now in issue because such damages did not flow from the breach of the guaranty agreement. The damages would have occurred to plaintiff just the same in the absence of any guaranty. The damage to plaintiff resulted from [his] interest in the lumber company as well as his contractual relations with other creditors and from the lumber company's bankruptcy and inability to pay its obligations, which bankruptcy was, in turn, caused by the bank's breach of its agreement with the lumber company. Plaintiff's injury either was derivative through his interest in the lumber company or was the result of business relations with others for the lumber company's benefit. It was not the result of his guaranty to the bank.

*Johnston*, 285 Or. at 427, 591 P.2d 746.

Plaintiffs are correct in that the Oregon Supreme Court's holding in *Johnston* was limited to the circumstances presented in that case. *See Johnston*, 285 Or. at 428 n. 1, 591 P.2d 746 (stating that "a guaranty of a loan to a corporation can be the basis for a personal cause of action against the lender," but only "under circumstances different from the present case"). Nevertheless, it is apparent that the dispositive issue remains whether the guarantor's "claimed damages were derivative of, rather than distinct from, a breach of the [lender's] agreement with the borrowing corporation or partnership." *Caplener*,

317 Or. at 515, 857 P.2d 830; *see also id.* ("shareholder who guaranteed loan stated no claim against the defendant corporation where injury suffered by shareholder was the same as that suffered by other creditors of the corporation" (citing *Weiss v. Nw. Acceptance Corp.*, 274 Or. 343, 350, 546 P.2d 1065 (1976))).

■■ The Court is not persuaded by Defendant's reliance on Johnston. The first amended complaint suggests that Ansteth Jewelers is asserting, among other things, a bad faith breach of contract claim against Defendant stemming from its handling of the business line of credit, not just the guaranty it executed in connection with the loan agreement entered into by Defendant and Elizabeth Retail. (*See, e.g.*, First Am. Compl. ¶¶ 6, 21–28, 38, 45–46.) The first amended complaint similarly suggests that Mrs. Arnell is seeking damages in her individual capacity for defamation and damage to her business reputation.[7] Taking all facts alleged as true and construing them in the light most favorable to the nonmoving party, the aforementioned damages claimed by Ansteth Jewelers and Mrs. Arnell could plausibly constitute damages that are distinct from Defendant's loan agreement with Elizabeth Retail. Accordingly, the Court recommends denying Defendant's motion to dismiss on this ground.[8]

## B. Bad Faith Breach of Contract

Defendant moves to dismiss Plaintiffs' claim for bad faith breach of contract on the ground that Plaintiffs have failed to

---

7. As discussed above, the Court rejected Defendant's argument that Mrs. Arnell lacked standing under the shareholder standing rule based on her assertion of claims for defamation and damage to her business reputation. That finding supports the parallel conclusion with respect to Mrs. Arnell's status as a guarantor of Elizabeth Retail's loan agreement.

8. Based on the findings described *infra*, Part IV.A.2–3, the Court declines to address the merits of Plaintiffs' "single entity theory," other than to say that the parties failed to provide any persuasive, much less controlling, authority on this point. (*See* Def.'s Statement Additional Auth. at 1; Pls.' Statement Additional Auths. at 2.)

state a claim upon which relief can be granted. The basis of Plaintiffs' claim for bad faith breach of contract is their contention that Defendant's

> demand and acceptance of payment of the Line of Credit followed by its declaration of default, identification of a cure for default, demand for payment to cure the default, negotiation of a cure for default, non-judicial foreclosure proceeding through Trustees sale and purchase of the property at Trustees sale were all in breach of its contract duty of good faith and fair dealing.

(First Am. Compl. ¶ 45.)[9] Defendant argues that none of the actions complained of constitute a breach of the implied contractual duty of good faith and fair dealing because Defendant did nothing more than invoke its express, written contractual rights.

■■■■ Generally, "every contract has an obligation of good faith in its performance and enforcement under the common law." *Klamath Off–Project Water Users, Inc. v. Pacificorp*, 237 Or.App. 434, 445, 240 P.3d 94 (2010). The purpose of the duty of good faith and fair dealing "is to prohibit improper behavior in the performance and enforcement of contracts, and to ensure that the parties 'will refrain from any act that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (citation and quotation marks omitted). But it is well settled that the duty of good faith and fair dealing "'cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract.'" *Id.* (citation omitted).

The Court concludes that, when accepting all of Plaintiffs' factual allegations as true, they have stated a claim for breach of the duty of good faith and fair dealing. While Defendant emphasizes repeatedly that it has merely invoked its written, contractual rights, that alone does not demonstrate the absence of a breach of the duty of good faith and fair dealing. *See, e.g., Elliott v. Tektronix, Inc.*, 102 Or.App. 388, 396, 796 P.2d 361 (1990) ("The jury's finding that defendants did not breach the contract does not necessarily resolve the implied duty claim, because a party may violate its duty of good faith and fair dealing without also breaching the express provisions of a contract.") (citations omitted).

■■■■ What gives the Court pause is that Defendant made no mention of Mr. Arnell's February 3, 2011 bankruptcy petition constituting an event of default under Elizabeth Retail's promissory note when it sent the August 17, 2011 letter to Ansteth Jewelers demanding expedited repayment of the business line of credit. That omission is significant because (1) Defendant was aware of Mr. Arnell's bankruptcy petition at the time it sent the August 17, 2011 letter and the fact that commencement of bankruptcy proceedings by a guarantor constituted an event of default, (2) Defendant did not declare Mr. Arnell's bankruptcy filing an event of default until several months after his debts were discharged in bankruptcy court and after the balance of the business line of credit was paid off by Ansteth Jewelers, and (3) Defendant initially represented that Mr. Arnell's bankruptcy-related default was not curable (even though it did not fall within the limited exceptions to the cure provision) or an event of default that Defendant

---

9. Plaintiffs' briefing makes clear that they are indeed asserting a claim for breach of the implied duty of good faith and fair dealing.

was willing to waive, and then proceeded to state that "best course of action" for Plaintiffs was to obtain at least $564,831.40 in financing in order to payoff the balance of a loan that was under water by $35,000.00 and whose five-year prepayment penalty period had not yet expired.

The timing of these events and representations by Defendant, coupled with the concomitant impact they had and/or could have had on Plaintiffs' ability to fulfill their respective obligations, state a claim for breach of the duty of good faith and fair dealing that should survive a motion to dismiss. (*See generally* First Am. Compl. ¶¶ 21–40, 45–46.) Accordingly, the Court recommends denying Defendant's motion to dismiss to the extent it seeks dismissal of Plaintiffs' claim entitled "bad faith breach of contract."

## C. Wrongful Foreclosure

Defendant argues that Plaintiffs' wrongful foreclosure claim should be dismissed because Defendant's nonjudicial foreclosure was expressly authorized by the OTDA, and because "Oregon does not recognize a tort of wrongful foreclosure." (Def.'s Mem. Supp. at 18; *see also* First Am. Compl. at 10.) Plaintiffs only offer the following response in their opposition brief: "As stated above, [Defendant] wrongfully foreclosed on Plaintiffs because it failed to follow the explicitly terms of the contract and breached the duty of good faith owed to Plaintiffs. These actions were in breach of the [OTDA] and the terms of the contract at issue in this case." (Pls.' Resp. at 22; *see also* First Am. Compl. ¶¶ 52–53.)

Plaintiffs' claim is fashioned as a tort claim for wrongful foreclosure, but Defendant is correct "that Oregon does not recognize a wrongful foreclosure tort claim." *Medici v. JP Morgan Chase Bank, N.A.*, No. 3:11–cv–00959–HA, 2014 WL 199232, at *4 (D.Or. Jan. 15, 2014) (citing *Rapacki v. Chase Home Fin. LLC*, 797 F.Supp.2d 1085, 1090–91 (D.Or.2011)). Accordingly, Plaintiffs' wrongful foreclosure tort claim should be dismissed. *See Meza–Lopez v. Deutsche Bank Nat'l Trust Co.*, No. 3:11–cv–00891–HU, 2012 WL 1081454, at *8–10 (D.Or. Feb. 13, 2012) (recommending that the plaintiff's claim for wrongful foreclosure be dismissed based in large part on the *Rapacki* decision), *findings and recommendation adopted*, 2012 WL 1079823, at *1 (D.Or. Mar. 30, 2012) (opinion of Mosman, J.) ("[P]laintiff argues Judge Hubel incorrectly refused to acknowledge an Oregon tort claim for wrongful foreclosure.... I agree with Judge Hubel's analysis of this point and with Judge Hernandez's analysis of [Oregon case law] in *Rapacki* .... Accordingly, this objection fails.").

## D. Bad Faith Foreclosure

Plaintiffs also bring a claim against Defendant for "bad faith foreclosure." [10] Specifically, Plaintiffs allege that

---

**10.** Unlike the original complaint, Plaintiffs' first amended complaint does not include a claim for "tortious bad faith." For that reason, the Court declines to address any arguments proffered in support of a tortious bad faith claim. *See Allfrey v. Mabus*, 770 F.Supp.2d 1128, 1137 (W.D.Wash.2011) ("The Court need not address this claim since it was not pled in Plaintiffs' complaint.").

The Court does note, however, that tortious bad faith requires a plaintiff to establish "that the defendant's conduct violated some standard of care that is not part of the defendant's explicit or implied contractual obligations ... [and] that the independent standard of care stems from a particular special relationship between the parties." *Rapacki*, 797 F.Supp.2d at 1091 (citation omitted). Notably, "the relationship between a lender and a borrower is an arm's length commercial relationship, not a special relationship under Oregon law." *Fleshman v. Wells Fargo Bank*,

Defendant "initiated and completed non-judicial foreclosure proceedings over objections of Plaintiffs[,] and in spite of having the opportunity to pursue a judicial foreclosure[,] in bad faith and without a basis in law."[11] (First Am. Compl. ¶ 47.)

While the parties spend considerable time debating the veracity of the allegations quoted above from paragraph forty-seven of the first amended complaint, they fail to provide the Court with any persuasive or controlling authority indicating that Oregon courts recognize a bad faith foreclosure tort claim any more than they recognize a wrongful foreclosure tort claim. From this Court's perspective, *Rapacki* and its progeny would seem to apply with equal force in the context of a "bad faith" (as opposed to "wrongful") foreclosure tort claim. Accordingly, the Court recommends granting Defendant's motion to dismiss Plaintiffs' bad faith foreclosure claim.

### E. Damage to Business Reputation

Plaintiffs' fourth claim for relief is styled as an independent claim for "damage to business reputation." (First Am. Compl. ¶ 49.) Among other things, Defendant argues that "damage to business reputation" is not an independent tort recognized under Oregon law. The Court agrees.

Plaintiffs appear to confirm in their response brief that damage to business reputation is merely a type of general damages that would be presumed in the event Defendant's allegedly defamatory actions

were found to be actionable *per se*. *See Benassi v. Georgia–Pac.*, 62 Or.App. 698, 704, 662 P.2d 760 ("When a slander [or libel] ascribes to the defamed party characteristics or conduct that would adversely affect his fitness for his occupation or profession, the slander [or libel] is actionable *per se*, and the plaintiff need not allege or prove any special damage. . . . In such a case, general damages, which include damage to business reputation, are presumed and may be recovered without evidence of the harm incurred."), *adh'd to as modified on recons.*, 63 Or.App. 672, 667 P.2d 532, *rev. den.*, 295 Or. 730, 670 P.2d 1035 (1983); *see also Huffman & Wright Logging Co. v. Wade*, 317 Or. 445, 453, 857 P.2d 101 (1993) ("The content of speech or writing is an element of the tort of defamation.").

Consistent with the authorities cited above, the Court will simply treat Plaintiffs' claim for damage to business reputation as a species of general damages being sought in this proceeding under the defamation claim, not an independent tort claim under Oregon law. *See Aguero v. Mortgageit, Inc.*, No. 1:09–CV–0640, 2009 WL 2486311, at *8 (E.D.Cal. Aug. 12, 2009) ("A request for [d]amages cannot form the basis of a separate cause of action.").

### F. Defamation

Defendant also moves to dismiss Plaintiffs' claim for defamation. "Under Oregon law, a claim for defamation has

---

N.A., 27 F.Supp.3d 1127, 1132 (D.Or.2014) (citation omitted); *see also Smith v. Bank of Am. NA*, No. 03:12–cv–01597–AA, 2013 WL 2659562, at *3 (D.Or. June 4, 2013) (noting, in context of case involving attempts by lender-bank to pursue nonjudicial foreclosure, the lack of authority to support a special relationship between a borrower and a lender or loan servicer).

11. Plaintiffs' second claim for relief was originally styled as a claim for tortious bad faith. When Plaintiffs filed their first amended complaint, the claim for tortious bad faith had been restyled as a claim for bad faith foreclosure.

three elements: '(1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special harm.' " *Neumann v. Liles,* 261 Or.App. 567, 575, 323 P.3d 521 (2014) (citing *Nat'l Union Fire Ins. Co. v. Starplex Corp.,* 220 Or.App. 560, 584, 188 P.3d 332, *rev. den.,* 345 Or. 317, 195 P.3d 65 (2008)).

■■■■ "In the professional context, a statement is defamatory if it is false and ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, [or] profession." *Brown v. Gatti,* 341 Or. 452, 458, 145 P.3d 130 (2006) (citations and internal quotation marks omitted). "Statements falsely alleging facts that are 'likely to lead people to question [a] plaintiff's fitness to perform his job' are defamatory *per se.*" *Neumann,* 261 Or.App. at 576, 323 P.3d 521 (citations omitted). "Outside the professional context, a statement is defamatory if it subjects the statement's object 'to hatred, contempt or ridicule, or tends to diminish the esteem, respect, goodwill or confidence in which the person is held or excites adverse, derogatory or unpleasant feelings or opinions against him.' " *Id.* at 575 n. 6, 323 P.3d 521 (quoting *Andreason v. Guard Publ'g Co.,* 260 Or. 308, 311, 489 P.2d 944 (1971) (brackets omitted)).

The basis for Plaintiffs' defamation claim is their contention that Defendant "repeatedly represented and published to the public and Plaintiffs' customers that they were in default of the [l]oan [agreement] and that Plaintiffs were legally entitled to foreclose on the property." (First Am. Compl. ¶ 48.) Plaintiffs maintain that such representations in the notice of default and election to sell "were false and defamatory, resulting in damage to Plaintiffs' reputa-

tion in the amount of at least $500,000." (First Am. Compl. ¶ 48; *see also* Pls.' Resp. at 19.)

Defendant initially argues that Ansteth Jewelers and Mrs. Arnell lack standing to assert a defamation claim predicated on the publication of the notice of default and election to sell. Defendant relies primarily on *Provisional Gov't of Republic of New Afrika v. ABC, Inc.,* 609 F.Supp. 104 (D.D.C.1985), where the district court stated:

Defamation is personal; a plaintiff who alleges defamation must show that the statement was published of and concerning him. Allegations of defamation by an organization and its members are not interchangeable. Statements which refer to individual members of an organization do not implicate the organization. By the same reasoning, statements which refer to an organization do not implicate its members.

*Id.* at 109 (citations, internal quotation marks, and brackets omitted).

Defendant also cites *Patzer v. Liberty Communications, Inc.,* 58 Or.App. 679, 650 P.2d 141 (1982), for the proposition that, "[f]or defamation of a business entity to give rise to a cause of action for an officer or member of the entity, a plaintiff must allege and prove that the defamatory remarks directed against the corporation also concerned her personally." (Def.'s Mem. Supp. at 16.) *Patzer* was an action for libel brought by the president, owner and sole stockholder of a company against the owners and personnel of television and radio stations regarding a series of allegedly defamatory broadcasts. *Patzer,* 58 Or.App. at 681, 650 P.2d 141. The trial court had dismissed for failure to state a claim and the Oregon Court Appeals reversed. *Id.* After noting that a plaintiff would be " 'entitled to recover if he can show the defamatory words were under-

stood as referring to him by persons who knew him, or if the words are such that the world would apply them to the plaintiff,'" *id.* at 682, 650 P.2d 141 (quoting *Marr v. Putnam*, 196 Or. 1, 18, 246 P.2d 509 (1952)), the Oregon Court of Appeals held as follows:

> [D]efendants published the name of the corporation, but not plaintiff's name. However, because plaintiff's surname is part of the corporation name, it is possible that persons hearing the remarks would understand them to refer to plaintiff. As was held in *Marr*, plaintiff should be allowed to prove that he was in fact personally libeled. We, therefore, hold that if plaintiff can prove that the defamatory remarks directed against the corporation also concerned him personally, he will have proved a cause of action for libel.
>
> . . . .
>
> [As to the sufficiency of the pleading,] Plaintiff's complaint alleges that the corporation was defamed and that the remarks 'reflected on plaintiff individually.' [ORCP 21 E(1) makes] clear that the pleading must allege that the remarks were 'published or spoken concerning the plaintiff.' An allegation that a defamatory statement reflects poorly upon an individual is too broad to fit within the rule. Plaintiff, therefore, having failed to allege that the defamatory statements made against the corporation concerned him individually, has not pleaded a cause of action under ORCP 20 E(1). Where, as in this case, it is likely that plaintiff can cure the defect by pleading further, the judgment of dismissal should have allowed plaintiff leave to amend his complaint.

*Id.* at 682–83, 650 P.2d 141 (footnote omitted).

Citing *Cushman v. Day*, 43 Or.App. 123, 602 P.2d 327 (1979), Plaintiffs contend that Defendant incorrectly asserts that Mrs. Arnell and Ansteth Jewelers lack standing to assert a defamation claim. *Cushman* was a defamation action brought by a number of police officers against a local union and one of its officials, who made several allegedly false and defamatory reports (radio broadcast, newspaper article, telegram to the police chief, etc.) relating to the conduct of unnamed police officers at the scene of a strike. *Id.* at 125–26, 602 P.2d 327. In evaluating the sufficiency of the officers' pleading, the Oregon Court of Appeals stated:

> It is true that under this second cause of action, no specific instance of misconduct is charged against any particular individual. However the statements read together charge misconduct of the group as a whole. The group is made up of [thirteen] police officers. When all or a significant portion of a small group are defamed, each individual in the group may be found to have been defamed. It is possible in reading the entire article to conclude that all of the officers present, or the majority of them, were involved in the misconduct alleged.

*Id.* at 129, 602 P.2d 327 (internal citations omitted).

In the present case, the notice of default and election to sell—the contents of which are not set forth in the first amended complaint or any exhibit attached thereto—refers to Elizabeth Retail and the fact that Mr. Arnell, a loan guarantor and co-member of Elizabeth Retail, had filed for bankruptcy. The notice of default and election to sell also states: "The Grantor [Elizabeth Retail] *or any other person owing an obligation*, the performance of which is secured by the Trust Deed, *is in default* and the Beneficiary [KeyBank National Association] seeks to foreclose the trust deed." (Def.'s Req. Judicial Notice Ex. G at 1) (emphasis added). It seems

plausible, then, that the contents of the notice of default and election could be understood by certain persons to refer to Ansteth Jewelers (the lessee of the property) and Mrs. Arnell (Mr. Arnell's wife, the other co-member of Elizabeth Retail and the sole shareholder of the lessee).

Nevertheless, as in *Patzer,* the first amended complaint fails to plausibly allege that the defamatory statements made against Elizabeth Retail in the notice of default and election to sell actually concerned Mrs. Arnell or Ansteth Jewelers. *Cf. Andreason v. Guard Publ'g Co.,* 260 Or. 308, 310–12, 489 P.2d 944 (1971) ("To establish a claim for defamation, a plaintiff must show, first, that the defendant made a defamatory statement *about the plaintiff.*") (emphasis added). Accordingly, the Court recommends granting Defendant's motion to dismiss Mrs. Arnell and Ansteth Jewelers' defamation claims with leave to replead.

As to Elizabeth Retail's claim for defamation, Defendant argues that the contents of the notice of default and election to sell were truthful and "[t]ruth is an affirmative defense to a defamation claim.". *Lansford v. Georgetown Manor, Inc.,* 192 Or.App. 261, 270, 84 P.3d 1105 (2004). Defendant also invokes the affirmative defense of privilege, *see Benassi,* 62 Or.App. at 702, 662 P.2d 760 (describing truth and privilege as affirmative defenses to a defamation claim), arguing that it had a qualified privilege to publish the notice of default and election to sell.

*Hulse v. Ocwen Fed. Bank, FSB,* 195 F.Supp.2d 1188 (2002), is an instructive example. There, the plaintiff brought a libel claim against a federal savings bank based, in part, on the publication of a trustee's notice of sale in one or more newspapers in general circulation in Oregon. *Id.* at 1206. The defendant-bank argued that the claim failed as a matter of law because the statement was true and because the bank's actions were privileged insofar as they were part of a quasi-judicial foreclosure proceeding. *Id.* This Court agreed with the defendant-bank, stating:

> A statement is conditionally privileged if: (1) it was made to protect the interests of defendants; (2) it was made to protect the interests of plaintiff's employer; or (3) it was on a subject of mutual concern to defendants and the person to whom the statement was made. . . .

> To overcome the qualified privilege, plaintiff must produce evidence 'of some kind of improper motive on defendant's part.' . . . .

> Here, the alleged libelous statements made by [the bank] were clearly made to protect [the bank]'s interests. Thus, a conditional privilege attaches to them. Plaintiffs fail to show that [the bank] abused its privilege. The evidence does not suggest that (1) [the bank] published the statements for any reason other than to secure their investment and proceed with the non-judicial foreclosure; (2) the publication was made to some person not reasonably believed to be necessary to accomplish that purpose; or (3) the statements included defamatory matter unrelated to the purpose.

> Most importantly, the evidence does not indicate that [the bank] did not believe its statements were true or lacked reasonable grounds to believe the truth of the statements. The evidence shows that the parties had, and continue to have, a good faith dispute as to the amount owed [the bank]. Because [the bank]'s position, as well as plaintiffs', is reasonable based on the evidence, plaintiffs have not created an issue of fact as to any kind of improper motive on [the bank]'s part in making these statements.

Therefore, even if the statements were defamatory, they were conditionally privileged and [the bank] is entitled to summary judgment on the libel claim. *Id.* at 1207–08 (internal citations omitted).

 In this case, as in *Hulse,* the Court concludes that a conditional privilege attaches to Defendant's publication of the notice of default and election to sell. However, the Court declines to recommend the dismissal of Elizabeth Retail's defamation claim at the motion to dismiss stage because Elizabeth Retail must be given the opportunity to potentially overcome this qualified privilege by presenting evidence of an improper motive on Defendant's part. Though it may be difficult to demonstrate, for example, that Defendant did not believe its statements were true or lacked reasonable ground to believe the truth of the statements, such a determination is best left for resolution at the summary judgment stage or at trial.[12] *See also Scott v. Kuhlmann,* 746 F.2d 1377, 1378 (9th Cir.1984) (per curiam) (stating that "affirmative defenses may not be raised by motion to dismiss," unless "the defense raises no disputed issues of fact.").

Indeed, the affirmative defenses of truth and conditional privilege that Defendant argues should result in the Court granting this motion to dismiss are fact dependent and require the finder of fact to evaluate evidence. At this stage we have "no evidence" and the Court is not the finder of fact. It is premature to evaluate the "truthfulness" of allegations, or the legitimacy or potential illegitimacy of the ancillary reasons for Defendant's actions.

## G. Trespass

 Lastly, Defendant moves to dismiss Plaintiffs' claim for trespass. To state a claim for trespass under Oregon law, "a plaintiff must [plausibly allege] an intentional, physical intrusion by the defendant on to the plaintiff's property which cause[d] damage to the plaintiff and which ha[d] not been authorized or consented to by the plaintiff." *Staton v. BAC Home Loans Servicing, LP,* No. 6:10–cv–01306–PA, 2014 WL 1803376, at *6 (D.Or. May 6, 2014) (citation omitted). In the event an alleged trespasser had the landowner's consent to enter upon the land for a particular purpose, then the landowner cannot maintain an action for trespass. *Verizon Nw., Inc. v. Main Street Dev., Inc.,* 693 F.Supp.2d 1265, 1278 (D.Or.2010); *see also Colmus v. Sergeeva,* 175 Or.App. 131, 135, 27 P.3d 166 (2001) ("Consent may constitute a privilege to trespass if there is evidence of actual willingness on the part of the landowner to have the trespasser engage in the particular type of entry.").

 Plaintiffs specifically allege the following under their trespass claim: "[Defendant] entered onto Plaintiffs' land and disturbed Plaintiffs' exclusive right of possession." (First Am. Compl. ¶ 50.) The deed of trust in this case, however, includes a provision entitled "Lender's Right to Enter." That provision states: "Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust." (Def.'s Req. Judicial Notice Ex. B at 2.)

The aforementioned provision negates the viability of the allegations set forth in paragraph fifty of the first amended complaint because Elizabeth Retail and its two members consented to Defendant entering

---

**12.** Failure to overcome this conditional privilege would also likely defeat any repleaded defamation claim asserted by Mrs. Arnell and Ansteth Jewelers.

upon the land in order to attend to its interests. Accordingly, the Court recommends granting Defendant's motion to dismiss Plaintiffs' trespass claim.

## V. CONCLUSION

For the reasons stated, Defendant's request (Docket No. 7) for judicial notice should be GRANTED, Defendant's supplemental request (Docket No. 26) for judicial notice should be GRANTED, and Defendant's motion (Docket No. 23) to dismiss should be GRANTED in part and DENIED in part.

## VI. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **December 5, 2014.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **December 22, 2014.** When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 17th day of November, 2014.